B1040 (Form 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET | ADVERSARY PROCEEDING NO. |
|---|---|
| (Instructions on Reverse) | |

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| CURTIS JAMES JACKSON, III | REED SMITH LLP and PETER RAYMOND |

| ATTORNEY(S) (Firm Name, Address, Telephone No.) | ATTORNEY(S) (If Known) |
|---|---|
| James Berman<br>John L. Cesaroni<br>Zeisler & Zeisler, P.C.<br>10 Middle Street, 15th Floor<br>Bridgeport, CT 06604        Telephone: 203-368-4234 | REED SMITH LLP<br>599 Lexington Avenue<br>New York, NY 10022 |

| PARTY (Check One Box Only) | | | PARTY (Check One Box Only) | | |
|---|---|---|---|---|---|
| ☑ Debtor | ☐ U.S. Trustee | | ☐ Debtor | ☐ U.S. Trustee | |
| ☐ Creditor | ☐ Trustee | ☐ Other | ☑ Creditor | ☐ Trustee | ☐ Other |

**CAUSE OF ACTION** (Write a brief statement of cause of action, including all U.S. statutes involved.)

Objections to claim 11 U.S.C. Section 502(b)(1) counterclaims for legal malpractice, breach of fiduciary duty and claims for excess fees charged by Reed Smith LLP.

---

### NATURE OF SUIT

(Number up to 5 boxes with the lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

*Note: Only a complaint including an objection to discharge under 11 U.S.C. § 727 will defer the clerk's entry of the debtor's discharge in bankruptcy.*
*A complaint to determine the dischargeability of a debt under 11 U.S.C. § 523 does not affect or determine a discharge with respect to other debts.*

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11 – Recovery of money/property – § 542 turnover of property
☐ 12 – Recovery of money/property – § 547 preference
☐ 13 – Recovery of money/property – § 548 fraudulent transfer
☑ 14 – Recovery of money/property – other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21 – Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31 – Approval of sale of property of estate and of a co-owner - § 363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41 – Objection/revocation of discharge - § 727(c), (d), (e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51 – Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66 – Dischargeability - § 523(a)(1), (14), (14A) priority tax claims
☐ 62 – Dischargeability - § 523(a)(2), false pretenses, false representation, actual fraud
☐ 67 – Dischargeability - § 523(a)(4), fraud as fiduciary, embezzlement, larceny
**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61 – Dischargeability - § 523(a)(5), domestic support
☐ 68 – Dischargeability - § 523(a)(6), willful and malicious injury
☐ 63 – Dischargeability - § 523(a)(8), student loan
☐ 64 – Dischargeability - § 523 (a)(15), divorce or separation obligation (other than domestic support)
☐ 65 – Dischargeability – other

**FRBP 7001(7) – Injunctive Relief**
☐ 71 – Injunctive relief – imposition of stay
☐ 72 – Injunctive relief – other

**FRBP 7001(8) – Subordination of Claim or Interest**
☐ 81- Subordination of claim or interest

**FRBP 7001(9) – Declaratory Judgment**
☐ 91 – Declaratory judgment

**FRBP 7001(10) – Determination of Removed Action**
☐ 01 – Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§ 78aaa et seq.
☑ 02 – Other (e.g.,other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☑ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☑ Check if a jury trial is demanded in complaint | Demand: $ To Be Determined |

**Other Relief Sought:**

Disallowance of claim filed by creditor and damages.

B1040 (Form 1040) (12/15)

## BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES

| NAME OF DEBTOR<br>CURTIS JAMES JACKSON, III | BANKRUPTCY CASE NO.<br>15-21233 (AMN) | |
|---|---|---|
| DISTRICT IN WHICH CASE IS PENDING<br>Connecticut | DIVISION OFFICE<br>New Haven | NAME OF JUDGE<br>Ann M. Nevins |

## RELATED ADVERSARY PROCEEDING (IF ANY)

| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
|---|---|---|
| DISTRICT IN WHICH ADVERSARY PROCEEDING IS PENDING | DIVISION OFFICE | NAME OF JUDGE |

| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>John L. Cesaroni |
|---|---|
| DATE<br>January 27, 2017 | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet.  When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney).  A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.**  Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.**  Give the names and addresses of the attorneys, if known.

**Party.**  Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.**  Enter the dollar amount being demanded in the complaint.

**Signature.**  This cover sheet must be signed by the attorney of record in the box on the second page of the form.  If the plaintiff is represented by a law firm, a member of the firm must sign.  If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **CHAPTER 11** |
| **CURTIS JAMES JACKSON, III** | § | **CASE NO. 15-21233 (AMN)** |
| **DEBTOR.** | § | |
| | § | |
| **CURTIS JAMES JACKSON, II** | § | |
| **Plaintiff,** | § | |
| | § | **ADVERSARY PROCEEDING** |
| **v.** | § | **NO.** |
| **REED SMITH LLP, and PETER RAYMOND** | § | |
| | § | |
| **Defendants.** | § | |

**AMENDED OBJECTIONS TO REED SMITH PROOF OF CLAIM NO 18-1 AND
ADVERSARY PROCEEDING CONTAINING COUNTERCLAIMS AGAINST REED
SMITH LLP AND PETER RAYMOND**

Curtis James Jackson, III ("Jackson" or the "Debtor"), the post-confirmation Debtor and Debtor in possession is pending a discharge in the above-captioned bankruptcy case (the "Bankruptcy Case"), that was filed under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended (the "Bankruptcy Code")[1], files the within Amended Objections to the Reed Smith proof of claim No 18-1 and Adversary Proceeding containing counter claims against Reed Smith LLP ("Reed Smith")for affirmative monetary relief and damages. Jackson submits the following:

## I.    JURISDICTION AND VENUE

1.      Jackson is a resident of Connecticut. Reed Smith is a law firm practicing law in the City, State and County of New York. On July 13, 2015, (the "Petition Date"), Jackson filed a

---

[1] All of the section references contained in the within amended Objections and Adversary Proceeding, not otherwise defined herein, are to the Bankruptcy Code.

voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, thereby initiating the Bankruptcy Case in the United States Bankruptcy Court for the District of Connecticut, Hartford Division. Under §301, the filing of the petition constituted an order for relief under Chapter 11 and, since that filing, under §§1107 and 1108, Jackson continued in possession and control of his assets and property, and continued to operate his businesses and manage his affairs. On July 7, 2016, the Court entered its order [D.E. 552] confirming Jackson's *Third Amended Plan of Reorganization* [D.E. 485] (the "Plan") and Jackson filed a petition to be discharged from the Chapter XI proceedings and the court has scheduled a hearing for the discharge application on February 2, 2017 at 10:00am on Jackson's Discharge Petition[2]. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334(a) and (b), and Bankruptcy Code § 502(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), (C) and (O). Venue in this district is proper pursuant to 28 U.S.C. § 1409(a).

## II.   FACTUAL BACKGROUND

2.      Jackson is a performer of rap music, a hip hop culture icon, actor, TV personality, well known entertainer, producer, and business entrepreneur. Jackson has appeared in numerous TV shows and made and continues to make public appearances. He has established himself as a well known artist who has broad based business interests in promoting such products as fragrances, apparel, footwear, health drinks, video games and headphones, and who also manages other artists and performers. Jackson's business is conducted through a number of separate legal entities (also referred to as "Debtor Related Entities") that promote and enhance Jackson's image and brand in the public market, and promote products and product-related services for business.

---

[2] Jackson has agreed to deposit the amount of the distribution to Reed Smith in escrow with the Disbursing Agent until a resolution of the objections and counterclaims against Reed Smith.

3.      Reed Smith represented Jackson for approximately 14 years in a number of separate legal matters both in litigated court cases and out-of-court settlements.  Jackson placed his full confidence and trust in Reed Smith and Peter Raymond ("Raymond") a partner in Reed Smith who acted as counsel for Jackson in numerous matters.  Jackson relied on Reed Smith and Raymond's legal advice and counsel.  Raymond, in his affirmation submitted to this court dated December 31, 2016, in a response to Jackson's objections to the Reed Smith fee claim, stated that, as partner in charge of Jackson's account at Reed Smith, he had a longstanding relationship with Jackson and claims to have saved Jackson millions of dollars in claims against Jackson, as well as recovering substantial sums of money on Jackson's behalf in a number of claims in which Reed Smith represented Jackson.  Raymond supports Jackson's position that Jackson placed his full confidence and trust in both Reed Smith and Raymond in their long term relationship.  Jackson believed that Reed Smith and Raymond, as his primary litigation counsel, always put his interests first over and above the interest of Reed Smith and Raymond.

4.      One of the reasons set forth by Jackson in his objections to the Reed Smith claim for the substantial amount of legal fees, and as stated in the Reed Smith Proof of Claim, is that Reed Smith and Raymond are directly responsible and their actions are the proximate cause for Jackson's filing the voluntary petition for relief under Chapter 11.  Jackson maintains that he was forced to file the petition under Chapter 11 as a result of the neglectful, negligent and unethical conduct of Raymond and Reed Smith in a lawsuit brought by Lastonia Leviston ("Leviston") against Jackson in New York State Supreme Court, New York County, Index No. 102449/10 (the "Leviston Case").  Reed Smith and Raymond did not follow established legal standards in representing Jackson in the Leviston Case by failing to provide effective representation and conduct proper pre-trial and trial preparation prior to the Leviston trial.  In addition, their lack of

effective representation and inadequate pre-trial preparation and preparation for trial caused Jackson to retain new counsel on the eve of trial.  Raymond and Reed Smith represented that they would cooperate with and provide all the material, documentation, and information to Jackson's new counsel, Bickel & Brewer, but failed and refused to cooperate with new trial counsel, which caused Jackson to be subject to an unfavorable jury verdict. As a result, Jackson could not establish his meritorious defenses to the allegations of Lastonia Leviston in the case against him.  This conduct resulted in a verdict against Jackson in an approximate sum of $7,000,000 consisting of both actual damages and punitive damages in addition to legal interest.

### III.   OBJECTIONS TO PROOF OF CLAIM FOR FEES FILED BY REED SMITH

5.   Jackson reasserts and realleges all of his objections filed on October 18, 2016 to the Proof of Claim filed by Reed Smith (**EXHIBIT A**).  Annexed as **EXHIBIT B** is a copy of the initial objections filed by Jackson to the Reed Smith claim. Jackson fully incorporates, realleges, and reasserts the allegations of fact and legal arguments contained within the annexed October 18, 2016 objections herein. Reed Smith's Response to Jackson's Objections is annexed hereto as **EXHIBIT C**.[3] Additionally, Jackson further claims that Reed Smith and Raymond committed acts of legal malpractice in representing him in the Leviston Case and is not entitled to be paid any legal fees whatsoever as a result of their failure to perform legal services in accordance with the acceptable standards in the legal community that apply to investigation and preparation for trial.  The specific acts of legal malpractice are stated in the within amendment and counterclaims for affirmative monetary damages which are directly related to the Reed Smith proof of claim.  Reed Smith breached their fiduciary duties as attorneys for Jackson by

---

[3] Reed Smith stated that they must amend their Proof of Claim, in that they received payment for part of their claim.

charging and demanding excessive legal fees for the pre-trial and trial preparation and trial in the Leviston Case.  Reed Smith did not disclose that it had an unwaivable conflict of interest regarding key material witnesses, as well as indemnity claims against two of those witnesses, and that Reed Smith and Raymond intentionally misrepresented to Jackson by failing to disclose to him that a binding pre-trial stipulation was agreed upon by Reed Smith with the Plaintiff's attorneys in the Leviston case, which precluded key material witnesses (William Leonard Roberts II a/k/a Ross ("Ross"), Maurice Murray ("Murray") and a representative from the internet provider/website host company (hereinafter "internet provider"), upon which the subject video was posted) from being deposed in the Leviston case in examinations before trial, and thereafter being called as a witness at trial, and which materially impaired Jackson's defense in the Leviston Case.  That "but for" Reed Smith and Raymond's negligence and misrepresentation to Jackson, Jackson would have been able to assert and prove meritorious defenses at trial to the Leviston claims.  Reed Smith and Raymond attempted to hide their negligence by misrepresenting that they made a good faith effort to locate Murray, one of the material key witnesses, and that they were unable to locate Murray, when, in fact Murray was easily locatable and available to be interviewed and called as a pre-trial and trial witness.  Ross and the internet provider should also have been deposed to establish Jackson's defenses (that he did not initially post the video), and at the very least, would have severely mitigated both the actual and punitive damages against Jackson as found by the jury in the Leviston trial.[4]

---

[4] Jackson filed the Chapter 11 case prior to the jury's verdict as it was recognized that without the depositions of the key material witnesses, Jackson could not establish meritorious defenses to the Leviston claims.

**COUNTERCLAIMS**

IV.    **AS AND FOR A FIRST CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY AND MALPRACTICE IN HAVING CONFLICTS OF INTEREST AND FAILURE TO EXERCISE DUE DILIGENCE**

6.    Jackson repeats and reiterates each and every allegation contained in Paragraphs 1 through 5 as if set forth a length herein.

7.    Reed Smith is a law firm practicing law in the City, State and County of New York providing legal advice and counsel to the public at large including but not limited to individuals, corporate, Limited Liability Companies, and other entities.

8.    Raymond is an attorney at law, licensed to practice in the State of New York and a member of Reed Smith.

9.    At all times hereafter mentioned, the Debtor (Jackson) is an individual that conducted business both individually and through related entities in the State of New York and was represented by Reed Smith and Raymond.

10.    Jackson's counterclaims are centered upon a lawsuit filed against him by Lastonia Leviston on February 24, 2010, in Supreme Court, New York County under Index No. 102449/10 (see copy of the Summons and Complaint annexed as **EXHIBIT D**).

11.    In an Answer dated July 21, 2010, Reed Smith and Raymond, as attorneys for Jackson, interposed an Answer to the Leviston Complaint on Jackson's behalf. A copy of the Answer is annexed as **EXHIBIT E.**

12.    Reed Smith and Raymond had continuously represented Jackson for in excess of a 12-year period commencing in 2002 until 2015.  Reed Smith acknowledged that both Reed Smith and Raymond had a long-standing relationship wherein they were Jackson's primary commercial litigator in matters involving his entertainment and related businesses, and that Reed

6

Smith both defended numerous claims against Jackson and recovered substantial monetary awards for him.  Reed Smith and Raymond, the primary Reed Smith litigation partner, had Jackson's full confidence and trust as his counsel, and Jackson believed that they always put his financial, personal and career interests first, over and above that of Reed Smith and Raymond. Jackson accepted Reed Smith and Raymond's legal advice and strategy, with absolute faith that the advice and counsel were true and accurate, and that there would never be a situation where he would ever question their legal guidance and direction.  Further, Jackson understood that Reed Smith and Raymond would also disclose any and all legal options available to Jackson and, at a minimum, discuss them with Jackson prior to their entering any binding agreement with Leviston that would be against his interest.

13.     Reed Smith claims that it complied with the New York rules regarding attorney retainers and engagement letters (22 NYCRR 1215(a)) in that it entered into a Retainer Agreement with Jackson under California law on May 25, 2004, retroactive to February 2, 2004 (the "2004 California Retainer") (annexed hereto as **EXHIBIT F**), and that the terms and conditions of the 2004 California Retainer are in compliance with New York law. Reed Smith further claims that the 2004 California Retainer is the only fee agreement that Reed Smith had with Jackson.  Further, Reed Smith acknowledges that the 2004 California Retainer was never amended or supplemented in any manner in all of the 12 years that Reed Smith represented Jackson.  That Reed Smith is bound by the terms of the 2004 California Retainer when, in point of fact, the 2004 California Retainer relates solely to a case or matter in the State of California for a 2004 California case, when the claims in both the Reed Smith Proof of Claim and Jackson's claims for legal malpractice relate to a 2010 case in the New York State Supreme Court, New

York County (the Leviston Case) (six years after the 2004 California Retainer).  A copy of the

Summons and Complaint in the Leviston case is annexed hereto as **EXHIBIT D**.

     14.    Reed Smith and Raymond claim that the 2004 California Retainer is the basis of

their fee arrangement with Jackson in the Leviston Case. An examination of that letter[5], which

was prepared by Reed Smith, states that:

> *"Co-Counsel.*
>
>     *As you are aware, Reed Smith LLP and various attorneys at that firm, including Fred Ansis, Peter Raymond, Kurt Peterson and Miles Cooley, have been working on various matters for you.  To the extent practical, Reed Smith has interacted primarily and directly with your attorney, Theodor K. Sedlmayr of Sedlmayr & Associates as a co-counsel, and you have directed Reed Smith LLP where and when practical to interact with Mr. Sedlmayr as your liaison.  In working with Mr. Sedlmayr on your various matters, Reed Smith LLP has agreed to compensate Mr. Sedlmayr for his services as liaison to Reed Smith (as opposed to Sedlmayr & Associates, P.C. legal services to you and your corporations/LLCs on the same or other legal matters for which Sedlmayr & Associates, P.C. bills you directly) from the fees paid by you and the corporations/LLCs in which you have an ownership interest to Reed Smith LLP.  It is important, and required by California Rules of Professional Conduct Rule 2-200, that you understand the terms of these financial arrangements.  Please feel free to ask any questions about this arrangement and you are encouraged to seek the advice of counsel.*
>
>     *It has been agreed that Mr. Sedlmayr will be paid for the services he renders in this regard out of the billings from Reed Smith LLP.  Mr. Sedlmayr will receive 10% of the fees up to the first $100,000; 12 ½% of the fees from $100,000 to $200,000; and 15% of all fees generated by Reed Smith LLP in excess of $200,000, all on a calendar year by year basis."*

     15.    Theodor Sedlmayr ("Sedlmayr"), who received a fee pursuant to the above stated

retainer for services provided to Jackson, did, upon information and belief, represent Ross at the

same time he was paid a fee by Reed Smith for services rendered to Jackson.

     16.    The material facts and allegations in the Leviston Case were that Jackson

published and distributed a homemade sex video (the "Video") featuring Leviston and Murray in

---

[5] Copy of Reed Smith 2004 California Retainer dated May 25, 2004, retroactive to February 2, 2004, filed as an exhibit by Reed Smith.

compromising unfavorable positions, and that Jackson superimposed his voice on the video without Leviston's consent in violation of New York Civil Rights Law §51 causing substantial damages to Leviston, mental anguish and reputational and punitive damages.

17.     It was established, prior to the trial, that the Video was first published on the Ross website *ThisisSabrinasSin.ning.com* by Ross, or one of his agents and/or associates, and not Jackson. Reed Smith and Raymond did not interpose in Jackson's Answer to the Leviston Complaint, that it was Ross that first published and distributed the Video.  Reed Smith and Raymond, during the course of their representation of Jackson, were aware of Ross' actions. Further, the fact that the Video was published and distributed on Ross' website could have been established by subpoenaing the website host provider in pre-trial discovery. Information regarding the IP address and other website data was and is readily available by simply searching the website name online.

18.     Reed Smith and Raymond had a direct and unwaivable conflict of interest as a result of their acknowledged and continuing relationship with Sedlmayr as provided for in the 2004 California Retainer; however, on information and belief, they continued in their representation of Jackson, in spite of the conflict, until 2015.

19.     Reed Smith claims in its Response to the Objections to its Proof of Claim that it entered into a Retainer Agreement dated May 25, 2004 retroactive to  February 2, 2004 (2004 California Retainer), and that the 2004 California Retainer was the retainer for the Leviston lawsuit, commenced in 2010 in New York State Supreme Court.

20.     The 2004 California Retainer provided that Reed Smith interact with Jackson's then-attorney Sedlmayr as co-counsel, and that Reed Smith, working with Sedlmayr, agreed to

compensate Sedlmayr for legal services performed on Jackson's behalf in any case, not just the California matter.

21.     The 2004 California Retainer further specifically provided that Reed Smith would represent Jackson in connection with certain of his activities in the entertainment business and with respect to Third-Party claims and lawsuits filed against him.

22.     The specific terms of the 2004 California Retainer prepared by Reed Smith[6] was under California Law and California rules and regulations with respect to the negotiation of attorneys licensed and practicing law in the State of California.   The 2004 California Retainer further states:

> "*It is important, and required by California Rules of Professional Conduct Rule 2-200, that you understated the terms of these financial arrangements.*"

23.     Reed Smith and Raymond are charged with the responsibility of being aware of Section 22 NYCRR 1215-1 of the New York Rules governing attorneys with respect to Retainer and engagement letters required to be executed by attorneys admitted to and practicing law in the State of New York, annexed hereto and made a part hereby and marked as **EXHIBIT G** is a copy of Section 22 NYCRR 1215-1 ("Section 22 NYCRR").

24.     Reed Smith admits that it did not specifically provide a specific initial Retainer or engagement letter to Jackson under Section 22 NYCRR in connection with New York law with respect to their representation of Jackson in the Leviston case.

25.     Reed Smith and Raymond further concede that no amended or supplemental Retainer was provided to Jackson for the Leviston case.  Reed Smith's admission that there is no other retainer other than the California Retainer letter attached to Reed Smith's Responses to

---

[6] In the event of an ambiguity or question, an agreement prepared by a party is strictly construed against the party that prepared the agreement.

Jackson's objections to claim No. 18-1 of the Reed Smith claim filed in this Court.  The 2004 California Retainer was entered into six (6) years prior to the commencement of the Leviston case.

26.    Reed Smith's 2004 California Retainer provided that it would work with and compensate Sedlmayr individually for services performed by him under California law, and not New York law.

27.    On information all belief, Reed Smith compensated Sedlmayr on all fees paid by Jackson with respect to the 2004 California Retainer and worked with Sedlmayr on the services performed by him from 2004 until 2015.

28.    That Sedlmayr represented William Leonard Robert II a/k/a Rick Ross ("Ross") in 2004 and on information and belief continued to represent Ross at all times mentioned in the Leviston Complaint (**EXHIBIT D**) thereby creating the conflict of interest herein alleged.

**V.    AS AND FOR A SECOND CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY AND MALPRACTICE IN FAILING TO CONDUCT  PRE-TRIAL INVESTIGATION AND DISCOVERY OF KEY MATERIAL WITNESSES AND ENGAGING IN OTHER CONDUCT PREJUDICIAL TO JACKSON**

29.    Jackson repeats and reiterates each and every allegation contained in Paragraphs 1 through 28 as if set forth at length herein.

30.    Annexed hereto as **EXHIBIT E** is a copy of the Answer in the Leviston Case interposed by Reed Smith and Raymond.  Annexed hereto as **EXHIBIT H** is a copy of the Pre-Trial Stipulation that was not disclosed to Jackson until many years after it was signed by Reed Smith.  Annexed hereto as **EXHIBIT I** is a copy of Reed Smith's Consent to a Certificate of Readiness for Trial filed by the Plaintiff's counsel in the Leviston Case, as it was agreed to and not objected to by Reed Smith or Raymond.  All of the aforesaid exhibits establish that Reed

Smith and Raymond failed and neglected to interview and depose Ross, Murray and the internet provider as key material witnesses; nevertheless, Reed Smith and Raymond certified that the Leviston Case was ready for trial.  The aforementioned key material witnesses were not deposed prior to or after the Leviston Case was marked ready for trial in 2012. The binding stipulation (**EXHIBIT H**) was entered into by Reed Smith on Jackson's behalf, without his knowledge or consent, and it effectively precluded Jackson from calling these material witnesses at trial, in what would have been a key and material part of establishing his defenses to Leviston's allegations in the Complaint.

31.     The Leviston Complaint alleged that Jackson unlawfully published and distributed a homemade video (the Video) of Leviston and her-then boyfriend, Murray, in a sexually compromising position.

32.     The video, depicting Leviston and Murray, was provided to Jackson by Murray who represented that he had the authority and the right to distribute and publish the Video.

33.     That Ross obtained a copy of the Video and made arrangements to post the Video on his internet website *ThisisSabrinasSin.Ning.com,* and that the website is controlled by Ross.

34.     Jackson did not initially post the Video on Jackson's website, and at a minimum, simply inserted a link on his website to the Ross website containing said Video, which was posted by Ross.

35.     That the initial posting and public distribution of the Video by Ross was done so in an effort to embarrass and harass Jackson, to diminish his public presence and to damage his brand in the market place.

36.     Reed Smith and Raymond were aware that Murray provided the Video to Jackson.

37.    Reed Smith and Raymond were aware that Ross posted the Video on the Ross website.

38.    Reed Smith and Raymond were aware that Ross was responsible for any damages sustained by Leviston as a result of the Video posted on the Ross website.

39.    Ross and Raymond were aware that Ross was a material and key witness in support of defenses and/or mitigation of any liability or damages attributed to Jackson in the Leviston case.

40.    Reed Smith and Raymond were aware that Murray was a material and key witness in the Leviston case, and should have been deposed at a pre-trial deposition as a part of a defense of Jackson.

41.    Reed Smith and Raymond did not even attempt to interview or issue a subpoena to examine Ross in a pre-trial deposition as a key and material witness in the Leviston case.

42.    Reed Smith and Raymond were aware of the name and data of the internet provider and/or website host that arranged for the initial posting and distribution of the Video by Ross on a website under his control and/or under the control of his agents, employees, and/or associates.

43.    Reed Smith and Raymond did not issue a subpoena to examine witnesses or demand documents from the internet provider and/or website host company, providing the website upon which the Video was posted, to determine the name of the individual or entity who posted the Video.

44.    Reed Smith and Raymond were aware of Murray's actions and reputation with respect to the video and did not issue a subpoena to examine Murray in a pre-trial deposition of Murray as a key material witness in the Leviston case.

13

45.    Reed Smith and Raymond, without consulting Jackson and without his consent, stipulated with the attorneys for Leviston in the Leviston case, on behalf of Jackson, that Reed Smith would not examine the aforementioned witnesses in pre-trial discovery proceedings, and that no witness would be called at trial unless the identity of the witness was disclosed pursuant to the stipulation.

46.    Reed Smith and Raymond stipulated with the attorneys for Leviston in the Leviston case on behalf of Jackson that Reed Smith would not examine the aforementioned material witnesses in pre-trial discovery proceedings by failing to disclose the aforementioned witnesses for pre-trial deposition and/or potential witnesses at trial.

47.    Reed Smith and Raymond agreed on behalf of Jackson, without consulting Jackson, to enter into a pre-trial stipulation on February 22, 2012 that represented that all of the discovery and pre-trial proceedings were completed and that no witnesses could be called at trial unless the witnesses were identified prior to trial (annexed as **EXHIBIT H**).

48.    That Reed Smith and Raymond agreed with the attorneys for Leviston (Plaintiff) in the Leviston case that the case was ready for trial and that all pre-trial proceedings had been completed in 2012, (see **EXHIBIT I,** copy of Note of Issue and Statement of Readiness for trial, filed without any objection by Reed Smith and Raymond).

49.    The stipulation (**EXHIBIT H**) and the Statement of Readiness (**EXHIBIT I**) entered into without objection by Reed Smith and Raymond and without Jackson's knowledge or consent, precluded Jackson from calling as key material witnesses, Ross, Murray and the internet provider, in the Leviston case at trial.

50.     Reed Smith and Raymond intentionally did not disclose to Jackson that Reed Smith entered into the stipulation, precluding the examination of Ross, Murray and the internet provider, and the ability to call them as defense witnesses in the Leviston case.

51.     Reed Smith and Raymond misrepresented to Jackson that the reason for not calling Murray as a witness in Jackson's defense is that Reed Smith and Raymond made diligent and a good faith efforts to locate Murray but that they were unable to locate Murray.

52.     Reed Smith and Raymond did not discuss with Jackson calling the internet provider that posted the Video at the instruction of Ross as a defense witness on behalf of Jackson, and failed to conduct proper investigation and discovery regarding the same.

53.     That on information and belief, as a result of the negligence of Reed Smith and Raymond, Reed Smith and Raymond failed to conduct a pre-trial interview or call Ross as a defense witness for Jackson.

54.     That on information and belief, as a result of the negligence of Reed Smith and Raymond, Reed Smith and Raymond failed to conduct a pre-trial interview or call as a pre-trial witness Murray as a witness, and therein precluded Jackson from calling Murray as a witness at trial.

55.     That on information and belief, as a result of the negligence of Reed Smith and Raymond, Reed Smith and Raymond did not interview or call the internet provider that posted the home Video by Ross as a witness.

56.     Reed Smith and Raymond did not represent and protect Jackson's interest in the Leviston case, and intentionally failed to disclose to Jackson that Reed Smith and Raymond had entered into a stipulation with the attorneys for Leviston that Reed Smith and Raymond that

prevented Jackson from calling as key material witnesses Ross, Murray and the internet provider in Jackson's defense.

57.    That the actions of Reed Smith and Raymond were binding upon Jackson and were against the interests of Jackson, in that they failed to provide the professional care and attention to Jackson in the defense of Jackson in accordance with acceptable professional standards governing Jackson's defense in the Leviston Case.

58.    Reed Smith and Raymond were aware that the internet provider would have verified that Ross posted and distributed the Video and that it would have been a defense to the claims of Leviston against Jackson.

59.    Reed Smith and Raymond failed to obtain discovery from key material witnesses and the production of documents that would have provided as a defense to the claims of Leviston in her claims for liability and damages in the Leviston case.

60.    Reed Smith and Raymond were aware that Murray voluntarily provided the Video to Jackson, and that Murray represented to Jackson that he was authorized to promote and distribute the Video on behalf of himself and Leviston.

61.    Reed Smith and Raymond failed to obtain discovery from key material witnesses and the production of documents that would have constituted a defense to the claims of Leviston in her claims for liability and damages in the Leviston case.

62.    Reed Smith and Raymond were aware that Murray voluntarily provided the home Video to Jackson and that Murray represented that he was authorized to promote and distribute the Video.

63.     Reed Smith and Raymond were aware and failed to demand and obtain the pre-trial testimony and production of documents from Murray that would have constituted a defense to Jackson in the Leviston claims for liability and damages in the Leviston case.

64.     Reed Smith and Raymond made affirmative and intentional misrepresentations to Jackson's house counsel over the telephone and via email correspondence regarding their attempt to make contact with Murray and his availability as a witness.

65.     Reed Smith and Raymond made affirmative and intentional misrepresentations to Jackson's house counsel over the telephone and via email correspondence regarding efforts to locate Murray, a material witness, in that Raymond advised Jackson's house counsel in sum and substance that he, Reed Smith and their investigators had searched for Murray and were unable to locate him and that Murray had in sum and substance 'fallen off the face of the Earth'.

66.     In fact, it was later learned by Jackson that, at the time, Murray was incarcerated in New Jersey, had been incarcerated for two years, and was easily located via simple internet searches, and through the use of investigator services, and Reed Smith, Raymond and/or their agents made affirmative and intentional misrepresentations as to their search for and the availability of Murray, and/or lacked due diligence in locating and securing Murray, who was a material witness and vital to the defense of Jackson in the Leviston action.

67.     Furthermore, Reed Smith and Raymond failed to disclose that Reed Smith had entered into a stipulation, without consulting with Jackson, preventing the calling of Murray, and other witnesses, and without Jackson's consent, and said stipulation was only disclosed to Jackson, several days after the locating of Murray by Jackson and his house counsel and investigator, and was done so by an associate in Reed Smith, and not by Raymond, who did not disclose the stipulation nor sought to consult and advise Jackson as to the same.

68.     The terms of the stipulation prevented Jackson from calling Murray as a witness for deposition and/or trial, and it was to the prejudice of Jackson, who did not agree to the terms of the stipulation, and who was not consulted as to its provisions and consequences prior to Reed Smith entering into the same.

69.     Reed Smith and Raymond were aware and failed to demand and obtain the pre-trial testimony and production of documents from Murray and other aforementioned witnesses that would have established a defense to Jackson against the Leviston claims for liability and damages in the Leviston case.

70.     On information and belief, during the course of their representation of Jackson, Reed Smith and Raymond did not make a good faith reasonable offer to enter into, without prejudice, settlement discussions with the attorneys for Leviston, and intentionally continued the case for the purpose of Reed Smith and Raymond charging Jackson additional and excessive legal fees.

71.     That Reed Smith and Raymond refused and declined to inform Jackson of the maximum legal fees for the trial of the Leviston case, and demanded approximately $500,000 for pre-trial services to prepare for trial prior to the scheduled trial date without providing detailed billing time charges for the pre-trial preparation for the trial.

72.     Reed Smith and Raymond, in the 75 day time period prior to the trial, claim billing time in the sum of $521,484.08 for trial preparation for the Leviston case.  When asked by Jackson's representative about the trial fee, Reed Smith and Raymond told Jackson's representative that they could not provide an estimated billing time amount for the trial other than it would be in excess of $1,000,000 for the trial.  The aforesaid pre-trial preparation fee was in addition to the approximately $1,500,000 previously paid to Reed Smith by Jackson for the

Leviston case.  The fees and expenses for the Leviston Case charged and expected to be charged by Reed Smith would have been in excess of approximately $3,000,000[7].

73.     Jackson's general counsel advised Reed Smith and Raymond that it was not acceptable to insist on the payment of $521,484.08 without a detailed billing statement, and that it was further not acceptable for Jackson to pay an aggregate of approximately $3,000,000 in fees for the pre-trial and trial in the Leviston Case without having the key material witnesses deposed. These events resulted in Jackson's general counsel discharging Reed Smith.

74.     Following the discharge, Reed Smith and Raymond represented that they would cooperate with incoming trial counsel for Jackson.  However, they intentionally failed to do so. Their lack of cooperation was a material detriment to Jackson's defense in the Leviston case, resulting in severe prejudice to Jackson, and ultimately causing a verdict to be entered against Jackson. This conduct subjects them to punitive damages as Reed Smith and Raymond are licensed attorneys that offer their services to the public at large.

## VI.  AS AND FOR A THIRD CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY AND MALPRACTICE BY CHARGING EXCESSIVE LEGAL FEES

75.     Jackson repeats and reiterates each and every allegation contained in Paragraphs 1 through 66 as if set forth at length herein.

76.     Reed Smith and Raymond stated to Jackson that the trial fee for the Leviston Case would be a minimum of $1,000,000.

77.     Reed smith and Raymond charged Jackson and were paid approximately $1,500,000 in fees from inception of the Leviston case up and until Jackson discharged Reed Smith and Raymond on March 27, 2015 prior to the start of the trial in the Leviston case.

---

[7] At the time of Reed Smith's demand for pre-trial fees ($521,484.08), Reed Smith had not submitted any billing information to Jackson.

78.     Reed Smith and Raymond misrepresented to Jackson and the attorneys hired by Jackson to replace Reed Smith and Raymond for the trial in the Leviston case, that they would provide full cooperation and turn over all material information and documentation to defend Jackson in the Leviston case, and failed and refused to do so.

79.     Reed Smith and Raymond billed and were paid by Jackson from inception of their representation of Jackson in 2011 approximately $1,500,000 in legal fees and expenses, and did not notify Jackson of the substantial increase in the hourly billing rate from the billing rate in the 2004 California Retainer Agreement admitted by Reed Smith as the only Retainer signed and agreed to by Jackson.

80.     That Reed Smith violated its fiduciary obligation to inform and retain Jackson's written consent under New York Retainer rules to obtain Jackson's agreement to the substantial hourly rate increase, causing Jackson to pay excessive legal fees to Reed Smith.

81.     That the excessive fees and fee increases paid by Jackson were a breach of Reed Smith's and Raymond's fiduciary duty to Jackson.

82.     That but for Reed Smith's and Raymond's actions and acts of legal malpractice as detailed in the above causes of action, caused Jackson substantial actual and punitive damages as follows:

(a)     Failed and neglected to interview and subpoena for pre-trial depositions and discovery key material witness namely Ross, Murray and the internet provider that posted the Video on the Ross website.

(b)     Charged excessive fees, breached their fiduciary obligation to Jackson and failed to provide a Retainer Agreement under New York section 22 NYCRR 1215-1.

(c)    Intentionally failed to disclose to Jackson that Reed Smith and Raymond entered into a pre-trial stipulation that precluded Jackson from calling Ross, Murray and the internet provider as key material witness in his defense in the Leviston claim

(d)    Intentionally misrepresented to Jackson that Murray was not able to be located as a witness when Murray was easily found and available to be a key material witness in Jackson's defense.

(e)    Misrepresented to Jackson and his new trial counsel that Reed Smith and Raymond would cooperate with Jackson by providing file material and turning over all material documentation to assist in Jackson's defense of the Leviston claims in the Leviston case.

(f)    That Reed Smith and Raymond charged Jackson excessive and unreasonable legal fees from inception of their representation of Jackson in 2011 until the time before trial and breached their fiduciary obligation to Jackson as a client.

(g)    Reed Smith and Raymond intentionally failed to make a good faith effort to resolve the Leviston case by making an unreasonable nominal offer to settle the claims as it was Reed Smith and Raymond's purpose and intent to continue to bill and be paid by Jackson for excessive amounts of money for legal services.

(h)    As a result of Reed Smith and Raymond's actions, Jackson is entitled to actual damages in the sum of $7,000,000.

(i)    That as a result of all of the above actions of Reed Smith and Raymond that Jackson is entitled to punitive damages in the sum of $25,000,000.

**WHEREFORE,** the Debtor/Counterclaim Plaintiff, Curtis James Jackson III, respectfully seeks the following relief:

1.      In regards to his Objections, Curtis James Jackson III prays that this Court grant his Objections by entering an order that denies the Reed Smith claim for fees, and in the alternative, orders a hearing on *quantum meruit* with respect to the services claimed to have been performed by Reed Smith, and for such other and further relief as to this Court may seem just and proper.

2.      In regards to his counterclaims, Curtis James Jackson III respectfully claims: (a) a money judgment; (b) punitive damages; (c) attorney's fees; (d) costs; and (e) such other and further relief as to this Court may seem just and proper.

Dated:  New York, New York
       January 27, 2017

Respectfully submitted,

**ZEISLER & ZEISLER, P.C.**

By:    / s / John L. Cesaroni
       James Berman (ct06027)
       John L. Cesaroni (ct29309)
       10 Middle Street, 15th Floor
       Bridgeport, Connecticut  06604
       Telephone:  (203) 368-4234
       Facsimile:  (203) 367-9778
       jberman@zeislaw.com
       jcesaroni@zeislaw.com

       and

       Baratta, Baratta & Aidala LLP
       Special Counsel for Debtor
       546 Fifth Avenue
       New York, NY 10036
       (212) 750-9700

By: / s / Joseph P. Baratta
     Joseph P. Baratta

By: / s / Imran H. Ansari
     Imran H. Ansari

### List of Exhibits

| | |
|---|---|
| **EXHIBIT A** | Proof of Claim of Reed Smith LLP |
| **EXHIBIT B** | Original Objections filed by Jackson to the Reed Smith claim |
| **EXHIBIT C** | Reed Smith's Response to Objections |
| **EXHIBIT D** | Summons and Complaint in the Leviston case |
| **EXHIBIT E** | Answer in Leviston Case |
| **EXHIBIT F** | 2004 California Retainer |
| **EXHIBIT G** | 22 NYCRR 12-15 |
| **EXHIBIT H** | Pre-Trial Stipulation Section |
| **EXHIBIT I** | Note of Issue and Certificate of Readiness |