UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | | |
|---|---|---|
| In re: | : | Case No.: 15-21233 (AMN) |
| | : | |
| CURTIS JAMES JACKSON, III, | : | Chapter 11 |
| *Debtor* | : | |
| | : | |
| | : | |
| CURTIS JAMES JACKSON, III, | : | Adv. Pro. No.: 17-02005 |
| *Plaintiff* | : | |
| v. | : | |
| | : | |
| REED SMITH LLP, and | : | |
| PETER RAYMOND, | : | |
| *Defendants* | : | |
| | : | Re:  AP-ECF No. 27 |

**MEMORANDUM OF DECISION AND ORDER
GRANTING DEFENDANTS' MOTION TO DISMISS COUNTS ONE, THREE,
FOUR, AND FIVE, AND PART OF COUNT TWO, OF THE AMENDED COMPLAINT**

*APPEARANCES*

| | |
|---|---|
| Curtis James Jackson, III<br>*Plaintiff* | Joseph P. Baratta<br>Imran H. Ansari<br>Baratta, Baratta & Aidala, LLP<br>546 Fifth Avenue, 6th Floor<br>New York, NY 10036 |
| Reed Smith LLP<br>*Defendant* | Thomas G. Rohback<br>Axinn, Veltrop & Harkrider LLP<br>90 State House Square<br>Hartford, CT 06103 |
| Peter Raymond<br>*Defendant* | Thomas G. Rohback<br>Axinn, Veltrop & Harkrider LLP<br>90 State House Square<br>Hartford, CT 06103 |

Before the Court is the defendants' motion to dismiss the adversary proceeding complaint alleging legal malpractice, breach of fiduciary duty and other claims. AP-ECF No. 27.[1] Reed Smith LLP ("Reed Smith") and Peter Raymond (collectively, the "Defendants") represented plaintiff Curtis James Jackson, III's ("Mr. Jackson") for several years in a case brought in New York state court by Lastonia Leviston ("Ms. Leviston"). *See,* New York State Supreme Court, Index No. 10102499 (the "Leviston Case"). Ms. Leviston alleged in her suit against Mr. Jackson that he posted an explicit video with her image to his website without her written consent, in violation of New York law, among other things. AP-ECF No. 22-4. Mr. Jackson fired the Defendants as his counsel on the "eve of trial" in the Leviston Case, and retained new counsel, Bickel & Brewer ("Replacement Counsel"). AP-ECF No. 22, ¶¶ 7, 9, 107. Approximately three months later, a jury returned a $7,000,000 verdict[2] against Mr. Jackson, precipitating his bankruptcy filing. AP-ECF No. 22, ¶¶ 13, 21.

On July 13, 2015 (the "Petition Date"), Mr. Jackson filed a voluntary Chapter 11 bankruptcy petition, commencing case number 15-21233 (the "Main Case"). The Court confirmed Mr. Jackson's Chapter 11 plan of reorganization (the "Plan") on July 7, 2016. ECF No. 552. Mr. Jackson then made all payments required under his Plan, earning a Chapter 11 discharge that entered on February 2, 2017. ECF No. 764. Plan payments to creditors, who allege claims that are disputed, like Reed Smith, will be paid upon allowance of their claims.

---

[1]    Citations to the docket in case no. 15-21233 are noted by "ECF No." Citations to the docket of this adversary proceeding no. 17-02005 are noted by "AP-ECF No."

[2]    The jury verdict was in two parts: a $5,000,000 verdict as to liability that entered before the Petition Date, and a $2,000,000 punitive damages verdict that entered after the Petition Date.

Mr. Jackson commenced this adversary proceeding against the Defendants asserting, generally, that the Defendants committed legal malpractice during their representation of him in the Leviston Case by, among other things, failing to depose and preserve the ability to call certain witnesses at trial; failing to engage in settlement talks; breaching their fiduciary duties; and, charging excessive legal fees.[3] AP-ECF No. 22. The Amended Complaint also included Mr. Jackson's objection to Reed Smith's Proof of Claim 18-1, filed in the Main Case, which the parties sought to have resolved in this adversary proceeding.[4] AP-ECF No. 22, ¶¶ 2-5; ECF No. 759. As Mr. Jackson already amended his complaint once, the Defendants now seek a dismissal of the Amended Complaint with prejudice, pursuant to Fed.R.Bankr.P. 7012 and Fed.R.Civ.P. 12(b)(6). *See* AP-ECF Nos. 22, 28.

For the reasons that follow, the motion is granted in part and denied in part. All the malpractice claims set forth in the Amended Complaint are dismissed with the exception of the claim set forth in Count Two that the Defendants committed malpractice by failing to conduct and preserve discovery of William A. Robert II, a/k/a "Rick Ross" ("Mr. Ross"), Maurice Murray ("Mr. Murray"), or an unnamed Internet Provider ("Internet Provider") which, if conducted, would have mitigated the amount of damages awarded against Mr. Jackson. All of Mr. Jackson's claims for breach of fiduciary duty are dismissed

---

[3]    Mr. Jackson amended his original complaint in response to the Defendants' first motion to dismiss. AP-ECF Nos. 1, 16, 22. The operative complaint for purposes of this decision is Mr. Jackson's amended complaint (the "Amended Complaint"). AP-ECF No. 22.

[4]    Reed Smith filed Proof of Claim 18-1 in the Main Case ("POC 18-1"), asserting an unsecured claim for $609,251.41, for legal services. POC 18-1. The Debtor objected. ECF Nos. 660, 832. The Plan provided that Reed Smith's claim would be treated as an unsecured claim with the ultimate percentage of repayment to be determined based on certain payment schedules. ECF No. 485. Reed Smith voted to accept the Plan. ECF No. 535. The Court granted the parties' motion to channel the hearing on the objection to POC 18-1 into this adversary proceeding. ECF No. 762. The Plan Administrator has reserved sufficient funds, pending resolution of this dispute to pay the defendant law firm its *pro rata* share of the Plan distribution, if its claim were to be allowed in full. AP-ECF No. 22.

as either duplicative or for failure to state a claim.  In addition to his claim for malpractice that survives this Decision, Mr. Jackson may proceed on his objection to POC 18-1 on the basis that the fees should be disallowed or reduced due to an alleged violation of 22 NYCRR 1215.1, an alleged conflict of interest, and alleged excessiveness.

## I.    JURISDICTION AND VENUE

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b), and the United States District Court for the District of Connecticut's General Order of Reference dated September 21, 1984.  This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A)(matters concerning administration of the estate), (B)(allowance of disallowance of claims) and (C)(counterclaims by the estate against persons filing claims against the estate).  Venue is properly in this District pursuant to 28 U.S.C. § 1409 because this adversary proceeding arises under the Main Case.  The parties consented to entry of a final order or entry of judgment by this Court, subject to traditional appeal rights.  AP-ECF No. 28, p.9, fn 1; *see* Fed.R.Bankr.P. 7012(b).

## II.   NATURE OF PROCEEDINGS

Statements of fact, except where noted, are drawn from the Amended Complaint. While considering the motion to dismiss, the Court must – and does – accept these facts as true.  *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).[5]

---

[5]    The Court notes that both parties have attempted at various times to introduce facts and exhibits not contained within the Amended Complaint or the exhibits thereto.  *See* AP-ECF Nos. 28, 35, 58.  The Court declines to consider this additional material and disregards and excludes the factual material not contained within the Amended Complaint and the exhibits attached thereto pursuant to Fed.R.Civ.P. 12(d). This ruling to disregard the additional material is without prejudice to the use of the material in any future motion for summary judgment or trial.

From 2002 to 2015, the Defendants served as Mr. Jackson's litigation counsel, representing him in a variety of matters, including the Leviston Case. AP-ECF No. 22, ¶ 10. In 2004, Mr. Jackson signed a retainer agreement with Reed Smith in California (the "California Agreement"). AP-ECF Nos. 22, ¶ 22; 22-8. The California Agreement provided that Reed Smith would represent Mr. Jackson in a variety of legal matters. AP-ECF No. 22-8. There was no other agreement relating to the Defendants' representation of Mr. Jackson, including their representation of him in the Leviston Case, other than the California Agreement. AP-ECF No. 22, ¶¶ 24, 50. The California Agreement was never amended or supplemented. AP-ECF No. 22. The California Agreement failed to comply with New York law regarding attorney retainers and fee agreements. AP-ECF No. 22, ¶¶ 48-50. The California Agreement included a provision that Reed Smith would split some of its fees with Theodor K. Sedlmayr ("Mr. Sedlmayr").[6] AP-ECF No. 22-8. Reed Smith paid Mr. Sedlmayr a portion of legal fees collected from Mr. Jackson from 2004 until 2015. AP-ECF No. 22, ¶ 52.

In 2010, Lastonia Leviston filed a three-count complaint (the "Leviston Complaint") against Mr. Jackson, alleging he published and distributed a graphic and illicit video (the "Video") of Ms. Leviston and Mr. Murray. AP-ECF No. 22-4. Specifically, the Leviston Complaint alleged Mr. Murray gave the Video to Mr. Jackson, and that Mr. Jackson modified the Video,[7] by adding his own commentary, and uploaded it to websites under

---

[6]    The Amended Complaint refers to Mr. Sedlmayr as also serving as Mr. Jackson's attorney. AP-ECF No. 22, ¶ 45. The California Agreement is addressed to "Mr. Curtis James Jackson III c/o Mr. Theodor K. Sedlmayr, Esq" and refers to Mr. Seldmayr as Mr. Jackson's "co-counsel" to Reed Smith. AP-ECF No. 22, ¶ 26; 22-8.

[7]    In his answer to the Leviston Complaint, itself attached to the Amended Complaint, Mr. Jackson admitted he "received a copy of a video depicting [Ms. Leviston] and that he caused certain additional scenes containing his likeness to be added to a video he received which depicted [Ms. Leviston]." AP-ECF No. 22-5. Mr. Raymond signed the Debtor's answer to the Leviston Complaint. AP-ECF No. 22-5.

his control.  AP-ECF No. 22-4.  Mr. Murray represented to Mr. Jackson that he, Mr. Murray, "was authorized to promote and distribute the Video on behalf of himself and [Ms.] Leviston."  AP-ECF No. 22, ¶ 73.  Count 1 of the Leviston Complaint alleged Mr. Jackson violated N.Y. Civ. Rights Law §§ 50 and 51 because he used Ms. Leviston's image without her written consent for the purposes of advertising or trade and Count 2 alleged Mr. Jackson intentionally caused her emotional distress by intentionally distributing the Video on the internet.  AP-ECF No. 22-4.[8]

On February 29, 2012, Mr. Raymond, on behalf of Mr. Jackson, signed a "Compliance Conference Order," essentially a discovery schedule, setting forth the remaining depositions to be conducted.  In the Compliance Conference Order, Mr. Raymond, on behalf of Mr. Jackson, agreed to inform counsel for Ms. Leviston by May 1, 2012 of any witnesses he intended to call at trial "other than those [Ms. Leviston] has already deposed."  AP-ECF No. 22-6.  None of the witnesses referenced in Mr. Jackson's Amended Complaint – Mr. Murray, Mr. Ross, or the Internet Provider – are referenced in the Compliance Conference Order.  Mr. Jackson was unaware of the Compliance Conference Order until many years after it was signed by Mr. Raymond.  ECF No. 22, ¶ 17.

The Defendants never deposed Mr. Murray and misrepresented to Mr. Jackson that they were unable to locate him.  Mr. Jackson later learned that Mr. Murray could be easily located, as he was then incarcerated in New Jersey.  AP-ECF No. 22, ¶¶ 75-78.  If Mr. Murray had been deposed or called as a witness at trial, he would have testified that he gave the Video to Mr. Jackson "with [Mr.] Murray's and [Ms.] Leviston's permission

---

[8]     Count 3 alleged defamation but was later withdrawn.  *Leviston v. Jackson*, 980 N.Y.S. 2d 716, 717 (N.Y. Sup. Ct. 2013).

and authority to distribute the Video." AP-ECF No. 22, ¶ 84. Mr. Murray would also have provided "other testimony that would [have served] to absolve and/or mitigate the claims and damages asserted against Mr. Jackson". ECF No. 22, ¶ 84.

The Defendants also never conducted pre-trial discovery regarding Mr. Ross. AP-ECF No. 22, ¶ 17. Though Mr. Jackson "simply inserted a link on his webpage to the Ross website," it was Mr. Ross, who first posted the Leviston Video to a website under Mr. Ross's control. AP-ECF No. 22, ¶¶ 15, 16, 58-59. Mr. Jackson asserted that it was Mr. Ross, "who was responsible for any damages sustained by [Ms.] Leviston as a result of the Video posted on the Ross website." AP-ECF No. 22, ¶ 87. If Mr. Ross had been deposed or called as a witness at trial, he would have testified that the Video was first posted on his website, and this testimony would have, according to Mr. Jackson, "absolve[d] and/or mitigate[d]" Ms. Leviston's claims against Mr. Jackson. AP-ECF No. 22, ¶¶ 33, 92.

The Defendants were aware that Mr. Ross was represented by Mr. Sedlmayr at the same time Mr. Sedlmayr received compensation from Reed Smith for services rendered to Mr. Jackson. AP-ECF No. 22, ¶¶ 27, 53. Because Reed Smith paid Mr. Sedlmayr (who was also representing Mr. Ross) at the same time it was representing Mr. Jackson during the Leviston Case an un-waivable conflict of interest existed, prejudicial to Mr. Jackson's defense of the Leviston Case. AP-ECF No. 22, ¶¶ 53-54.

Additionally, the Defendants never conducted pre-trial discovery of the Internet Provider who, if called at trial, would have testified that the Video was first posted to a website controlled by Mr. Ross. AP-ECF No. 22, ¶¶ 95-96. The Defendants were aware

that this testimony would have verified that Mr. Ross first posted the Video.  AP-ECF No. 22, ¶¶ 17, 98-100.

Approximately two and a half months prior to trial, on March 27, 2015, Mr. Jackson terminated the Defendants as his counsel in the Leviston Case due to their "lack of effective representation and inadequate pre-trial preparation."  AP-ECF No. 22, ¶¶ 20, 108.  Mr. Jackson retained substitute counsel, Bickel & Brewer ("Replacement Counsel").  AP-ECF No. 22, ¶ 103.  The Defendants represented that they would cooperate with Replacement Counsel, however, they failed to do so.  AP-ECF No. 22, ¶ 102.

On April 23, 2015, Mr. Jackson's Replacement Counsel sought leave from the state trial court to reopen discovery, to depose Mr. Murray, Mr. Ross, and the Internet Provider, but the request was denied.  AP-ECF No. 22, ¶¶ 102-104.  The Compliance Conference Order signed by the Defendants during their representation of Mr. Jackson, "effectively preclude[d]" Mr. Jackson's Replacement Counsel from conducting discovery or eliciting testimony at trial of Mr. Murray, Mr. Ross, or the Internet Provider.   AP-ECF No. 22, ¶ 17; 22-6, 22-7.

Trial began on June 15, 2015, approximately eleven (11) weeks after the Defendants were terminated as Mr. Jackson's counsel.  Slightly less than a month later, the jury reached a verdict as to liability on both counts of the Leviston Complaint.  As to Count 1, for violating N.Y. Civ. Rights Law §§ 50 and 51, the jury awarded Ms. Leviston $2,500,000 in compensatory damages.  Proof of Claim 5-1.  As to Count 2, for the intentional infliction of emotional distress, the jury awarded Ms. Leviston $2,500,000 in

compensatory damages, for a total award of $5,000,000 in compensatory damages.[9] Proof of Claim 5-1.

For their representation of him, the Defendants claim Mr. Jackson owes them $609,235.41 for unpaid legal fees and costs related to the Leviston Case, as well as another case, *Simmons v. Stanberry*, in which Reed Smith represented Mr. Jackson. POC 18-1.

### III. THE ALLEGATIONS ASSERTED IN THIS ADVERSARY PROCEEDING AND THE DEFENDANTS' MOTION TO DISMISS

The Amended Complaint is not a model of clarity and, rather than separating allegations into different counts,[10] lumps several allegations into each count and incorporates all previously made allegations into each subsequent count. Despite the lack of clarity, the Court interprets the Amended Complaint as asserting the following allegations:

- That the Defendants committed malpractice by:

  o failing to address a direct and un-waivable conflict of interest resulting from the California Agreement's provision providing that Reed Smith would share some of its fees with Mr. Sedlmayr, who also represented Mr. Ross. (AP-ECF No. 22, ¶¶ 27, 44, 51-54);

---

[9]    On the same date as the Petition Date (July 13, 2015), Ms. Leviston moved for relief from the automatic stay, 11 U.S.C. § 362, so that the trial in New York State Supreme Court could proceed to the issue of punitive damages. ECF No. 7. After relief from stay was granted, the jury subsequently awarded Ms. Leviston an additional $2,000,000 in punitive damages. ECF No. 20; Proof of Claim 5-1.

[10]    The Amended Complaint refers to "causes of action" however, the Court applies the term "Counts" for convenience.

- o failing to comply with Section 1215-1 of the N.Y. Comp. Codes R. & Regs. Title 22 ("NYCRR") governing attorney retainer and engagement letters.  (AP-ECF No. 22, ¶¶ 48, 49);

- o failing to properly prepare a defense to the Leviston Complaint by failing to conduct discovery of Mr. Murray, Mr. Ross, and the Internet Provider. (AP-ECF No. 22, ¶¶ 17, 61, 136, 142a);

- o entering into the Compliance Conference Order without Mr. Jackson's knowledge or consent that effectively precluded Mr. Jackson from calling Mr. Murray, Mr. Ross, and the Internet Provider at trial. (AP-ECF No. 22, ¶¶ 17, 69, 70, 79, 142c);

- o failing to seek a swift settlement rather than engage in protracted litigation.  (AP-ECF No. 22, ¶¶ 19, 37, 119, 120, 130, 142g);

- o failing and refusing to cooperate with Replacement Counsel. (AP-ECF No. 22, ¶¶ 20, 21, 102, 109, 142e); and,

- o charging excessive legal fees during the Leviston case (AP-ECF No. 22, ¶¶ 142b, 142f); and further alleges

- That the Defendants breached their fiduciary duties owed to Mr. Jackson by:

  - o failing to address a direct and un-waivable conflict of interest resulting from the California Agreement's provision providing that Reed Smith split some of its fees with Mr. Sedlmayr, who also represented Mr. Ross (AP-ECF No. 22, ¶¶ 27, 44, 51-54);

- failing to "notify [Mr.] Jackson of the substantial increase in the hourly billing rate," and "refus[ing] and declin[ing] to inform [Mr.] Jackson of the maximum legal fees for the trial of the Leviston Case" (AP-ECF No. 22, ¶¶ 110, 113);

- entering into the Compliance Conference Order without Mr. Jackson's knowledge or consent that effectively precluded Mr. Jackson from calling Mr. Murray, Mr. Ross, and the Internet Provider at trial. (AP-ECF No. 4, 22, ¶¶ 17, 69, 70, 79, 142c);

- failing to seek a swift settlement rather than engage in protracted litigation. (AP-ECF No. 22, ¶¶ 4, 36, 37, 119, 120, 130, 142g);

- failing and refusing to cooperate with Replacement Counsel. (AP-ECF No. 22, ¶¶ 20, 21, 102, 109); and,

- charging excessive legal fees during the Leviston case (AP-ECF No. 22, ¶¶ 4, 107-116, 142b, 142f).

The Amended Complaint also alleged that the Defendants failed to assert third-party actions against Mr. Murray and Mr. Ross and implicate Mr. Ross in Mr. Jackson's answer to the Leviston Complaint, thus preventing Mr. Jackson from mounting an effective defense at trial.  AP-ECF No. 22, ¶¶ 83, 94.  The Defendants moved to dismiss the Amended Complaint for "failure to state a claim upon which relief could be granted." AP-ECF No. 27, 28; Fed.R.Bankr.P. 7012; Fed.R.Civ.P. 12(b)(6).

## IV.    APPLICABLE LAW AND CHOICE OF LAW

### *Rule 12(b)(6) Standard*

The standard a court applies to review a motion to dismiss pursuant to Fed.R.Civ.P. 12 is well established.

> To survive a Rule 12(b)(6) motion to dismiss, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937.
> *Wilson v. Dantas*, 746 F.3d 530, 535 (2d Cir. 2014).

A court's task is not to weigh evidence or determine whether it is probable that a defendant is liable; but rather, to determine if it is plausible that the plaintiff is entitled to the relief sought based on the facts alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A]lthough 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris*, 572 F.3d at 72 (*quoting Iqbal*, 556 U.S. at 679). A court's review of a complaint is not conducted in a vacuum; but is a "context-specific task that requires the [] court to draw on its judicial experience and common sense" in evaluating whether the allegations are plausible. *Harris*, 572 F.3d at 71-72 (*quoting Iqbal*, 566 U.S. at 679).

While a court is "generally limited" to evaluating the four corners of the complaint, it may consider "documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits," and "may also look to public records, including complaints filed in state court, in deciding a motion to dismiss." *Blue Tree Hotels Inv.*

*(Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004); *see also Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998)("It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including case law and statutes.").[11]

### Choice of Law

As a threshold matter, though the parties do not seem to contest the issue, because this Court sits in Connecticut while the underlying claims arose from a trial held in New York, the Court must conduct a choice of law analysis based on Connecticut law.[12] *In re Eternal Enterprise*, 558 B.R. 47, 55 (Bankr.D.Conn. 2016)(*citing In re Gaston & Snow*, 243 F.3d 599, 601-02 (2d Cir. 2001)("[B]ankruptcy courts confronting state law claims that do not implicate federal policy concerns should apply the choice of law rules of the forum state.")).   Under the "most significant relationship" approach applied in Connecticut, the Court finds New York law regarding the malpractice and breach of fiduciary duty claims applies.  *See American States Ins. Co. v. Allstate Ins. Co.*, 282 Conn. 454, 467-68 (2007).

---

[11]    Here, the Court may take judicial notice of documents filed in the Leviston Case.  *See Lefkowitz v. Bank of New York*, 676 F.Supp.2d 229, 249 (S.D.N.Y. 2009)("Judicial notice may encompass the status of other lawsuits, including in other courts, and the substance of papers filed in those actions."); *Cerny v. Rayburn*, 972 F.Supp.2d 308, 312, n.1 (E.D.N.Y. 2013)(taking "judicial notice of the publicly available and relevant filings in the related bankruptcy litigation for the limited purposes of establishing the 'fact of such litigation and relating filings' and in order to determine 'their preclusive effect.'" (*first quoting Int'l Star Class Racing Ass'n v. Tommy Hilfiger U.S.A. Inc.,* 146 F.3d 66, 70 (2d Cir. 1998), *then quoting Sure-Snap Corp. v. State St. Bank & Trust Co.*, 948 F.2d 869, 872 (2d Cir. 1991))).

[12]    Mr. Jackson's response to the Defendants' motion to dismiss asserted that the Amended Complaint adequately pled a cause of action for legal malpractice under New York law.  AP-ECF No. 35, p. 22.  The Defendants' motion to dismiss relied on Connecticut and New York law, but asserted the standards in both states are substantially the same.  AP-ECF No. 28, p. 9.  The Court expresses no opinion on the Defendants' contention.

### *Pleading Legal Malpractice*

A claim of legal malpractice is not immune to a motion to dismiss. *Kirk v. Heppt*, 532 F.Supp.2d 586, 591 (S.D.N.Y. 2008)("A cause of action for legal malpractice poses a question of law which can be determined on a motion to dismiss."). "To properly plead an action against an attorney for legal malpractice under New York State law, in addition to privity between the parties, a plaintiff must allege facts that tend to show:

(1) that the attorney acted negligently;

(2) that the attorney's negligence was the proximate cause of a loss sustained; and

(3) actual and ascertainable damages."
*Prout v. Vladeck*, 316 F.Supp.3d 784, 797, 2018 U.S. Dist. LEXIS 97714 (S.D.N.Y. 2018), *reconsideration denied*, 319 F.Supp.3d 741 (S.D.N.Y. 2018)(*quoting Baker v. Dorfman*, 239 F.3d 415, 420 (2d Cir. 2000).

"To properly plead negligence, a party must aver that an attorney's conduct 'fell below the ordinary and reasonable skill and knowledge commonly possessed by a member of his profession.'" *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006)(*quoting Grago v. Robertson*, 370 N.Y.S.2d 255, 258 (N.Y. App. Div. 1975)). By way of example, an attorney may be liable for legal malpractice if he or she exhibits "ignorance of the rules of practice, [or] fail[s] to comply with conditions precedent to suit, or ... neglect[s] to prosecute or defend an action." *Hatfield v. Herz*, 109 F.Supp.2d 174, 180 (S.D.N.Y. 2000)(*quoting Bernstein v. Oppenheim & Co.*, 554 N.Y.S.2d 487 (N.Y. App. Div. 1990)). "[A] complaint that essentially alleges either an error in judgment or a selection of one among several reasonable courses of action fails to state a claim for malpractice." *Kirk*, 532 F.Supp.2d at 592 (internal quotations omitted).

"[T]o establish proximate, or 'but for,' causation in an action for attorney malpractice, a plaintiff must plausibly allege that, but for the malpractice, the plaintiff would have received a more advantageous result, would have prevailed in the underlying action, or would not have sustained some actual and ascertainable damage." *Prout*, 316 F.Supp.3d at 799 (*citing Schwartz v. Olshan Grundman Frome & Rosenzweig*, 753 N.Y.S.2d 482, 486 (N.Y. App. Div. 2003).

A complaint that does not plead a 'case within a case' or address the merits of the plaintiff's case in the underlying action should be dismissed for failure to allege proximate cause. *Collins v. Felder*, 2017 U.S. Dist. LEXIS 211105, at *4-5 (S.D.N.Y. Dec. 21, 2017)(*citing Sonnenschine v. Giacomo*, 744 N.Y.S.2d 396, 397 (N.Y. App. Div. 2002)("While the complaint is replete with allegations describing defendants' negligence in the underlying action, it says nothing concerning the merits of plaintiffs' defense. That deficiency warrants dismissal of the complaint for failure to state a cause of action, there being no allegations that but for the alleged malpractice plaintiffs would have prevailed in the underlying action, or at least sustained a smaller judgment against them.").

For the Amended Complaint to survive the Defendants' motion to dismiss, it must "plead[] factual content that allows the court to draw the reasonable inference" that: 1) Mr. Jackson had an attorney-client relationship with the Defendants, 2) the Defendants were negligent, 3) the Defendants' negligence was the proximate cause of, 4) damages suffered by Mr. Jackson. *Sherman v. Town of Chester*, 752 F.3d 554, 560 (2d Cir. 2014); *Rubens v. Mason [Rubens II]*, 527 F.3d 252, 255 (2d Cir. 2008). If a count in the Amended Complaint fails to plausibly "state a claim upon which relief can be granted," then the count must be dismissed. Fed.R.Civ.P. 12(b)(6); Fed.R.Bankr.P. 7012.

### *Pleading Breach of Fiduciary Duty*

A claim alleging a breach of fiduciary duty must set forth three elements: "(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom." *Johnson v. Nextel Communications, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011).

## V.     DISCUSSION

### *Dismissal of Certain Breach of Fiduciary Duty Claims Is Warranted*

"Under New York law, where a claim for breach of fiduciary duty is 'premised on the same facts and seeking the identical relief' as a claim for legal malpractice, the claim for breach of fiduciary duty 'is redundant and should be dismissed.'" *Nordwind v. Rowland*, 584 F.3d 420, 432-33 (2d Cir. 2009)(*quoting Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, Inc.,* 780 N.Y.S.2d 593, 596 (N.Y. App. Div. 2004)). However, "[t]he fiduciary duty of an attorney … 'extends both to current clients and former clients and thus is broader in scope than a cause of action for legal malpractice.'" *Prout*, 316 F.Supp.3d at 807 (*citing Neuman v. Frank,* 919 N.Y.S.2d 644 (N.Y. App. Div. 2011)("A cause of action for legal malpractice must be based on 'the existence of an attorney-client relationship at the time of the alleged malpractice'")). "Thus, a cause of action for legal malpractice based upon alleged misconduct occurring during the attorney's representation of the plaintiff is not duplicative of a cause of action for breach of fiduciary duty based upon alleged misconduct occurring after the termination of the representation." *Neuman v. Frank*, 919 N.Y.S.2d at 645–46.

Here, substantially all the allegations and facts in the Amended Complaint relate to the Defendants' representation of Mr. Jackson during the Leviston Case.  In multiple instances, Mr. Jackson alleged -- with no distinction and based upon the same facts --

that the Defendants committed malpractice and breached their fiduciary duties.   Mr. Jackson did not allege any distinct damages arising from malpractice compared to a breach of fiduciary duty.   As it relates to the allegations regarding the Defendants' conduct during their representation of Mr. Jackson in the Leviston Case, Mr. Jackson's claims for breach of fiduciary duty are duplicative of his claims for legal malpractice and are dismissed.   One allegation discussed later in this Decision – the allegation that the Defendants failed to cooperate with Replacement Counsel – involves conduct that occurred after Mr. Jackson terminated the Defendants as counsel, and therefore, is not a claim for legal malpractice but solely a claim for a breach of fiduciary duty.   For this reason, the allegation that the Defendants breached their fiduciary duty by failing to cooperate with Replacement Counsel is not dismissed as duplicative of the other claims for legal malpractice.

### Defendants Failed to Address Conflict of Interest
### with Mr. Sedlmayr and Failed to Comply with 22 NYCRR 1215-1

The first allegation made by Mr. Jackson and the primary focus of Count One was that the Defendants possessed an un-waivable conflict of interest because, as described earlier, there was a fee sharing agreement with an attorney who also represented Mr. Ross, and that the California Agreement failed to comply with New York law[13] relating to attorney fee agreements.   *See* AP-ECF No. 22, ¶¶ 44, 48.   Specifically, the Amended Complaint asserted the Defendants were "aware" that Mr. Sedlmayr represented Mr. Ross, and that the Defendants therefore had a "direct and un-waivable conflict of interest." AP-ECF No. 22, ¶¶ 28, 44.   Both the Amended Complaint and the California Agreement stated that Mr. Sedlmayr was in fact Mr. Jackson's attorney.   AP-ECF Nos. 22, ¶ 45; 22-

---

[13]     N.Y. Comp. Codes R. & Regs. Title 22 § 1215.

8 ("To the extent practical, Reed Smith has interacted primarily and directly with your attorney, [Mr.] Sedlmayr. . . .").

Assuming the facts in the Amended Complaint are true, as this Court must, neither the alleged conflict of interest nor non-compliance with New York law constitutes a cause of action for legal malpractice under New York law. *Stonewell Corp. v. Conestoga Title Ins. Co.,* 678 F.Supp.2d 203, 211-12 (S.D.N.Y. 2010)("A 'conflict of interest, even if a violation of the Code of Professional Responsibility, does not by itself support a legal malpractice cause of action.'")(*quoting Sumo Container Station, Inc. v. Evans, Orr, Pacelli, Norton & Laffan, P.C.*, 719 N.Y.S.2d 223 (N.Y. App. Div. 2000)). Without determining whether the California Agreement complies with New York law, a failure to comply with N.Y. Comp. Codes R. & Regs. Title 22 § 1215 does not constitute a cause of action for damages. *Seth Rubenstein P.C. v. Ganea*, 833 N.Y.S.2d 566, 570 (N.Y. App. Div. 2007)("The language of 22 NYCRR 1215.1 contains no express penalty for noncompliance. Indeed, the intent of Rule 1215.1 was not to address abuses in the practice of law, but rather, to prevent misunderstandings about fees that were a frequent source of contention between attorneys and clients.")(citations omitted).

Other than the fact that the Defendants were "aware" of Mr. Sedlmayr's conflict of interest, the Amended Complaint fails to allege this conflict or the failure to comply with 22 NYCRR 1215-1 had any specific impact on the Defendants' representation of Mr. Jackson in the Leviston Case or was the proximate cause of any specific injury. AP-ECF No. 22, ¶ 28. The language of the Amended Complaint is telling:

> Par. 53:    Sedlmayr represented Ross in 2004 and on information and belief he continued to represent Ross at all times mentioned in the Leviston Complaint [], and the litigation thereof, thereby creating the conflict of interest herein alleged.

18

Par. 54:    Said conduct on the part of Reed Smith and Raymond constitutes malpractice and breach of fiduciary duty, was prejudicial to the defendant of Jackson in the Leviston matter, and caused Jackson to incur substantial damages during the Leviston litigation.

AP-ECF No. 22, ¶¶ 53, 54.

What is missing are factual allegations supporting proximate causation. "A failure to establish that an attorney's conduct proximately caused harm requires dismissal of the malpractice action, regardless of whether the attorney was in fact negligent." *Stonewell Corp.*, 678 F.Supp.2d at 211-212. Here, the allegation fails to address how the Defendants' conduct was prejudicial, and, how Mr. Jackson would have obtained a more advantageous result in the Leviston Case but for the prejudicial conduct. Mr. Jackson's conclusory statements that the Defendants' conduct was prejudicial and caused damage are insufficient. Accordingly, the claim set forth in Count One for malpractice based upon the Defendants' failure to address a conflict of interest with Mr. Sedlmayr and failure to comply with 22 NYCRR 1215-1 is dismissed for failure to state a claim for which the Court may grant relief.[14]

### *Defendants Failed to Conduct Discovery and Entered into the Compliance Conference Order*

Count Two, in addition to reasserting and reiterating the prior allegations, alleged that the Defendants committed legal malpractice by failing to conduct "reasonably competent pre-trial investigation and discovery of key material witnesses and engaging in other conduct prejudicial" to Mr. Jackson's defense. AP-ECF No. 22. Specifically, Mr.

---

[14]    The dismissal of Count One for malpractice does not preclude Mr. Jackson from pursuing his objection to POC 18-1 based upon the Defendants' failure to comply with 22 NYCRR 12.15.1 or the alleged conflict of interest. However, a failure to comply with NYCRR 1215.1 by not obtaining a signed letter of engagement or a retainer agreement is not fatal to the recovery of fees and does not preclude a law firm from seeking to recover the reasonable value of services rendered on a *quantum meruit* basis. *See Barry Mallin & Associates P.C. v. Nash Metalware Co. Inc.*, 849 N.Y.S.2d 752 (N.Y. Civ. Ct., Jan. 10, 2008)(*citing Seth Rubenstein P.C.*, 833 N.Y.S.2d at 570).

Jackson asserted that the Defendants committed malpractice when they failed to conduct discovery from Mr. Ross, Mr. Murray, and the Internet Provider and that "but for" the Defendants' failure, these witnesses would have provided testimony that "constituted a defense to Jackson in the Leviston claims for liability and damages in the Leviston case."[15]    AP-ECF No. 22, ¶¶ 61, 63, 68, 69.    Defendants asserted that none of the proposed testimony from Mr. Ross, Mr. Murray, or the Internet Provider would have constituted a defense to liability under N.Y. Civ. Rights Law §§ 50 and 51.    The Court agrees with the Defendants on the issue of liability.

The Leviston Complaint sought damages for violating N.Y. Civ. Rights Law §§ 50 and 51, as well as for the intentional infliction of emotional distress.    As to the former, the jury, in rendering a verdict against Mr. Jackson, must have found that: 1) Mr. Jackson used Ms. Leviston's likeness; 2) for advertising purposes or for the purposes of trade; and 3) without her written consent.    *See generally*, *Titan Sports, Inc. v. Comics World Corp.*, 870 F.2d 85, 87 (2d Cir. 1989)(discussing the elements of a N.Y. Civ. Rights Law § 51 claim).    As to the latter claim for intentional infliction of emotional distress, the jury must have found that: 1) Mr. Jackson committed extreme and outrageous conduct; 2) with the intent to cause Ms. Leviston severe emotional distress; 3) that Ms. Leviston suffered severe emotional distress; and 4) a causal connection existed between Mr. Jackson's actions and Ms. Leviston's harm.    *See generally, Newton v. City of New York*, 566 F.Supp.2d 256, 275 (S.D.N.Y. 2008)(discussing the elements of a claim for the intentional infliction of emotional distress under New York law).

---

[15]    In addition to alleging that the Defendants were negligent by failing to conduct discovery of these three witnesses, Mr. Jackson also alleged that the Defendants were negligent in entering into pre-trial stipulations, including the Compliance Conference Order.

The Court assumes as true that Mr. Ross would have testified that he and/or his employees or agents first posted the Video to a website controlled or operated by Mr. Ross. AP-ECF No. 22, ¶ 92. However, even if Mr. Ross testified as described, his testimony would have been insufficient as a defense to liability under N.Y. Civ. Rights Law §§ 50 and 51. Nothing limits Mr. Jackson's liability under the New York statutes if he was merely the second person to use Ms. Leviston's likeness without her written consent. Nothing permits Mr. Jackson to escape liability if someone else (here, Mr. Ross) violated §§ 50 or 51 first. On May 24, 2018, the Court directed the filing of supplemental memoranda of law limited to the following question:

> [Whether] [u]nder New York law and in the context of the Leviston litigation . . . liability under N.Y. Civil Rights Law § 50 or § 51 [is] limited to the first person to post a video to the internet?
> AP-ECF No. 50.

While Mr. Jackson's counsel represented during oral argument held on May 23, 2018, that authority existed for the proposition that liability is limited to the first person, Mr. Jackson's supplemental memorandum acknowledged that the issue had not been addressed by any court in the context of N.Y. Civil Rights Law §§ 50 and 51. AP-ECF No. 58, P. 4. Given the lack of authority supporting the contention that being second to post the Video would negate any of the elements of N.Y. Civ. Rights Law §§ 50 or 51, Mr. Ross's testimony that he posted the Video first would be irrelevant to the issue of Mr. Jackson's liability. Because Mr. Ross's testimony would be irrelevant as to liability, the allegation -- that the Defendants committed malpractice by failing to conduct discovery of Mr. Ross or to preserve his testimony for trial -- fails to sufficiently plead the Defendants

were negligent or that their conduct was the proximate cause of any injury to Mr. Jackson.[16]

Similarly, and for the same reasons that the allegation involving Mr. Ross fails, the testimony of the Internet Provider that the Video was first posted by Mr. Ross is irrelevant to Mr. Jackson's liability for either the claims under N.Y. Civ. Rights Law §§ 50 and 51 or the claim of intentional infliction of emotional distress. Accordingly, the allegation set forth in Count Two that the Defendants committed malpractice by failing to conduct discovery and preserve the Internet Provider's testimony fails to state a claim for legal malpractice.

The allegation that Mr. Murray – if called -- would have confirmed that the Video was given to Mr. Jackson voluntarily and that Mr. Murray had represented to Mr. Jackson that the Video was given with Mr. Murray's and Ms. Leviston's permission and authority to distribute it, similarly fails. AP-ECF No. 22, ¶ 84. This allegation is insufficient because that testimony would not constitute a defense to liability under N.Y. Civ. Rights Law §§ 50 and 51. Mr. Murray's testimony that he represented to Mr. Jackson orally that he was authorized to distribute the Video would have been irrelevant, as N.Y. Civ. Rights Law § 51 requires "written consent." *Stephano v. News Grp. Publications, Inc.*, 64 N.Y.2d 174, 183 (N.Y. 1984)("By its terms the statute applies to any use of a person's picture or portrait for advertising or trade purposes whenever the defendant has not obtained the person's written consent to do so."). Without evidence that Ms. Leviston consented in writing – which Mr. Jackson does not allege Mr. Murray would have provided – any failure to

---

[16] Additionally, because Mr. Ross's testimony was irrelevant on the issue of liability, the allegation that the Defendants were negligent by agreeing to pre-trial stipulations, including the Compliance Conference Order, fails to assert a claim for malpractice. AP-ECF No. 22, ¶¶ 80, 82.

conduct discovery or preserve Mr. Murray's testimony is insufficient to state a claim for legal malpractice.[17]

Taking the allegations in the Amended Complaint as true, the preservation of these three witnesses for trial could not have avoided Mr. Jackson's liability under N.Y. Civ. Rights Law §§ 50 and 51 or the claim of intentional infliction of emotional distress.

However, while Mr. Jackson fails to adequately plead a viable legal malpractice claim as to the jury's ultimate liability determination, he has sufficiently pled that but for the Defendants' negligence, the damages he suffered may have been mitigated or absolved.  AP-ECF No. 22, ¶ 92.

The Leviston jury could have considered evidence that Mr. Jackson was told Ms. Leviston consented and that Mr. Ross was the first person to publish the Video in its determination of punitive damages.  Section 51 of the Civil Rights Law provides that a person may "recover damages for any injuries sustained by reason of such use and if the defendant shall have knowingly used such person's name, portrait, picture or voice in such manner as is forbidden or declared to be unlawful by section fifty of this article, the jury, in its discretion, may award exemplary damages."  N.Y. Civ. Rights Law § 51 (McKinney 2018).  "Neither oral consent nor estoppel is a complete defense; they are available only as partial defenses in mitigation of damages."  *Brinkley v. Casablancas*, 438 N.Y.S.2d 1004, 1009 (N.Y. App. Div. 1981)(*quoting Lomax v.  New Broadcasting Co.*, 238 N.Y.S.2d 781 (N.Y. App. Div. 1963)); *see also Greenaway v. Corcoran Group*, 906 N.Y.S.2d 779 (N.Y. Sup. Ct. 2010)(*quoting Roberts v. Conde Nast Pubs., Inc.*, 146

---

[17]    Similarly, any claims that the Defendants committed malpractice by misrepresenting the ability to locate Mr. Murray are insufficient as a matter of law because even if located, Mr. Murray's testimony would not have not have constituted a defense to liability.

N.Y.S.2d 493 (N.Y. App. Div. 1955)("Good faith or its absence; mistake or knowing impertinence; misapprehension of evidence of approval; or such an absence of such evidence that no reasonable man would imply approval, are all matters which a jury might be allowed to consider, one way or another, in approaching the task of assessing or withholding exemplary damages.")).

Considering the facts pled in the Amended Complaint, this allegation, viewed in the light most favorable to Mr. Jackson, adequately (though narrowly) supports a claim that the Defendants were negligent because they failed to conduct discovery and preserve the testimony of three witnesses that may have mitigated the amount of damages awarded against Mr. Jackson in the Leviston Case. This is not to say that Mr. Jackson will be successful on his malpractice claim, but that the allegation – that the Defendants failed to conduct and preserve testimony from the three witnesses, which would have mitigated Mr. Jackson's damages -- survives the motion to dismiss. Mr. Jackson must, nonetheless, prove that the Defendants' conduct was negligent and that but for the Defendants' negligent conduct, Mr. Jackson would not have suffered some amount of actual and ascertainable damages. Failure or inability to do so may result in summary judgment entering in favor of the Defendants.

### Defendants Failed to Assert Affirmative
### Defenses and/or a Third-Party Action Against Mr. Murray and Mr. Ross

Another allegation asserted by Mr. Jackson in Count Two is that the Defendants "failed to assert affirmative defenses and/or a third-party action against Mr. Murray" and/or against Mr. Ross. AP-ECF No. 22, ¶¶ 83, 94. This assertion fails for a lack of any factual support. "Where [a] plaintiff fails to 'allege facts to support [his] conclusory allegations that other claims would have been viable,' his malpractice claim based on his former

attorney's failure to bring those causes of action should be dismissed for failure to state a claim." *Houraney v. Burton & Associates, P.C.*, Docket No. 08 CV 2688 (CBA)(LB), 2010 WL 3926907, 2010 U.S. Dist. LEXIS 105020, at *28-29 (E.D.N.Y. Sep. 7, 2010)(*quoting Ideal Steel Supply Co. v. Beil*, 865 N.Y.S.2d 299 (N.Y. App. Div. 2008)).

Here, Mr. Jackson failed to plead facts to allow this Court to draw the reasonable inference that Mr. Jackson had any viable affirmative defenses or third-party claims against either Mr. Murray or Mr. Ross. A cogent description of what affirmative defenses should have been asserted and, the factual basis to support such defenses, is simply missing from the Amended Complaint. Similarly, Mr. Jackson failed to identify what third-party claims could have been brought against Mr. Murray or Mr. Ross and the basis for any such claim. In the absence of facts supporting Mr. Jackson's conclusory statements that the Defendants failed to assert affirmative defenses and third-party claims, the allegation that the Defendants were negligent for such conduct fails to state a claim for legal malpractice. Accordingly, the allegation set forth in Count Two that the Defendants were negligent by failing to assert affirmative defenses and/or a third-party action against Mr. Murray and Mr. Ross shall be dismissed.

### Defendants Failed to Cooperate with Replacement Counsel

Also in Count Two, Mr. Jackson alleged that the Defendants breached their fiduciary duty and committed malpractice by failing to cooperate with Replacement Counsel and "[t]heir lack of cooperation was a material detriment to [Mr.] Jackson's defense in the Leviston case, resulting in severe prejudice to [Mr.] Jackson, and ultimately causing a verdict to be entered against [Mr.] Jackson." AP-ECF No. 22, ¶¶ 20, 102. As previously noted above, a cause of action for breach of fiduciary duty is broader than a

claim for legal malpractice because it extends to cover misconduct occurring after the termination of the representation. *See Neuman v. Frank*, 919 N.Y.S.2d 644 (N.Y. App. Div. 2011). Here, the claim for malpractice fails as the conduct alleged – the failure to cooperate with Replacement Counsel – occurred after termination of the attorney-client relationship. The post-termination conduct is covered under scope of the claim for breach of fiduciary duty.

However, Mr. Jackson fails to plead sufficient facts to allow the Court to plausibly conclude that the Defendants are liable for a breach of fiduciary duty. Mr. Jackson merely alleges the Defendants failed to cooperate with Replacement Counsel to devastating effect. AP-ECF No. 22, ¶¶ 20, 102. But, in what way did the Defendants fail to cooperate with Replacement Counsel? Did they withhold information or provide inaccurate or incomplete information? How did the failure to cooperate, "result[] in severe prejudice" or "ultimately caus[e] a verdict to be entered" against the plaintiff? Formulaic allegations devoid of further factual enhancements such as these are insufficient to meet the plausibility standard and are insufficient to withstand dismissal. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557. Accordingly, Mr. Jackson's allegation that the Defendants breached their fiduciary duty by failing to cooperate with Replacement Counsel insufficiently states a claim for relief and must be dismissed.

### *Defendants Charged Excessive Legal Fees*

In Count Three, in addition to reasserting all prior allegations, Mr. Jackson alleged that the Defendants committed legal malpractice by charging excessive legal fees. Specifically, the Amended Complaint stated the Defendants "did not notify [Mr.] Jackson of the substantial increase in the hourly billing rate," and that the Defendants "refused and

declined to inform [Mr.] Jackson of the maximum legal fees for the trial of the Leviston Case." AP-ECF No. 22, ¶¶ 110, 113. In a conclusory fashion, Mr. Jackson states that the allegedly excessive fees "constitute . . . malpractice during the course of representation of [Mr.] Jackson in this Leviston" Case. AP-ECF No. 22, ¶ 116.

But even assuming these facts as true, excessive fees by themselves do not constitute "attorney negligence." *Achtman*, 464 F.3d at 337 ("Generally, an attorney may only be held liable for 'ignorance of the rules of practice, failure to comply with conditions precedent to suit, or for his neglect to prosecute or defend an action.'")(*quoting Bernstein*, 554 N.Y.S.2d at 489-90). The Amended Complaint is devoid of facts alleging a causal nexus between the excessive legal fees and the adverse verdict in the Leviston Case. Accordingly, Count Three fails to sufficiently plead that the Defendants' conduct – allegedly charging Mr. Jackson excessive attorneys' fees -- was either negligent conduct or the proximate cause of the adverse verdict in the Leviston Case, and therefore must be dismissed for failure to state a claim. The Court's conclusion that dismissal is warranted for the claim of malpractice based upon charging excessive fees does not preclude Mr. Jackson's prosecution of his objection to POC 18-1 on the basis that the fees were excessive.

### *Defendants Engaged in Protracted Litigation Rather than Settle*

As with prior counts, Mr. Jackson in Count Four reasserted and reincorporated all prior allegations of the Amended Complaint. More specifically, Mr. Jackson alleged that the Defendants committed legal malpractice by "pursuing litigation on a matter for which the Defendants believed [Mr.] Jackson did not have a viable defense" and for failing to settle the Leviston Case before trial. AP-ECF No. 22, ¶¶ 118-120. Much of Mr. Jackson's

argument on the former point latched onto statements made in the Defendants' first motion to dismiss.[18] Mr. Jackson characterized these statements by the Defendants, that he had a "remarkably bad case," and that "there was no valid defense," as concessions that the Defendants pursued a futile litigation strategy in order to enrich themselves at his expense. AP-ECF No. 22, ¶¶ 35, 122-125. Without deciding the appropriateness of relying on "statements" made in a court pleading as a basis for a claim of relief, Mr. Jackson's contentions that the Defendants committed malpractice by failing to enter into meaningful settlement negotiations and failing to offer Ms. Leviston more than $250,000 to settle the Leviston Case, are insufficient to state a claim for relief. Mr. Jackson fails to allege that he directed the Defendants to offer more than $250,000 or that he made a settlement offer that the Defendants failed to convey to Ms. Leviston's counsel. Mr. Jackson's allegations lack a plausible set of facts demonstrating how the Defendants were negligent or their conduct proximately caused the Leviston jury verdict. Such vague allegations are insufficient to state a claim; they are precisely the type of "unadorned, the-defendant-unlawfully-harmed-me accusations" that, the Supreme Court has held, "will not do." *Iqbal*, 556 U.S. at 678. Additionally, there is no explanation why Mr. Jackson's Replacement Counsel could not have settled the case. *See Schutz v. Kagan Lubic Lepper Finkelstein & Gold, LLP,* 2013 WL 3357921, at *7 (S.D.N.Y. July 2, 2013)("[I]t is well-settled that the introduction of new counsel serves as an intervening cause in a legal malpractice claim, severing the chain of causation between the negligent actions of an attorney and a plaintiff's injuries, so long as new counsel has 'sufficient opportunity to protect the plaintiffs' rights.'")(*quoting Perks v. Lauto & Garabedian*, 760 N.Y.S.2d 231,

---

[18]    The Defendants moved to dismiss the original complaint and in lieu of responding to their motion, Mr. Jackson filed the Amended Complaint. AP-ECF Nos. 16, 17, 22.

232 (N.Y. App. Div. 2003)).  There are no facts suggesting that Replacement Counsel did not have sufficient opportunity to protect Mr. Jackson's rights or was unable to settle the case after March 27, 2015 and before the start of trial on June 15, 2015.  AP-ECF No. 22, ¶ 108.  Although Mr. Jackson states that Replacement Counsel was hired on the "eve of trial," in fact, they had almost three months to try to settle with Ms. Leviston.  That time period provided a sufficient opportunity for Replacement Counsel to protect Mr. Jackson's rights by seeking to reach a settlement.  Accordingly, Count Four fails to allege facts showing that the Defendants were negligent or proximately caused the adverse jury verdict in the Leviston Case, and therefore must be dismissed.

### *Defendants Failed to Properly Prepare a Defense*

Count Five alleged the Defendants committed legal malpractice by "failing to develop a reasonably competent defense to [Ms.] Leviston's claims" under N.Y. Civ. Rights Law §§ 50 and 51 and for the intentional infliction of emotional distress.  AP-ECF No. 22, ¶¶ 136, 140.  Like all previous counts, Mr. Jackson repeated and incorporated all prior allegations made in the Amended Complaint.  The specific allegations in Count Five -- that the Defendants failed to prepare a defense to the Leviston Complaint by neglecting to conduct discovery of Mr. Murray, Mr. Ross, and the Internet Provider -- are nearly identical to the allegations in Count Two.  The difference in Count Five is that Mr. Jackson alleged that the Defendants' failure to call Mr. Ross and other witnesses prevented Mr. Jackson from presenting evidence in support of a defense that publishing the Video was not for advertising or trade purposes.  AP-ECF No. 22, ¶¶ 137, 138, 139.  Mr. Jackson claimed that the Video was posted in the course of a dispute with Mr. Ross rather than for advertising or trade purposes.  However, nowhere does Mr. Jackson plead that Mr.

Ross, Mr. Murray, or the Internet Provider – if called -- would have offered testimony that Mr. Jackson posted the Video for other than advertising or trade purposes. Without facts suggesting that the testimony from these witnesses would have constituted a defense to this element, the conclusory statements are insufficient to withstand dismissal.

Even if Mr. Jackson had sufficiently alleged that the witnesses would have testified that Mr. Jackson's posting of the Video was in furtherance of his dispute with Mr. Ross that in and of itself would not have removed Mr. Jackson's conduct from being for advertising or trade purposes. *See Leviston v. Jackson*, 980 N.Y.S.2d 716, 721 (N.Y. Sup. Ct., December 3, 2013)("The record reveals that Jackson had an ongoing rap war with Ross, and used it to generate interest in himself and to attract viewers to his website, which qualifies as a trade purpose."). Mr. Jackson fails to plead sufficient facts that plausibly suggests that but for the Defendants' conduct, he would have prevailed on his claim that the Video was not posted for advertising or trade purposes. Accordingly, Mr. Jackson's allegations in Count Five that the Defendants were negligent in developing a defense to Mr. Jackson's liability under N.Y. Civ. Rights Law §§ 50 and 51 by failing to seek discovery or preserve testimony from Mr. Ross and other witnesses fails to plausibly set forth a claim for legal malpractice.

## VI.    CONCLUSION

The Court considered the parties' other arguments in support of or in opposition to dismissal and, to the extent not specifically referenced, finds them unpersuasive at this stage of the proceedings.[19]    Accordingly, for the reasons stated above, Counts One,

---

[19]    The Court considered the arguments raised by the parties, including the parties' supplemental briefs. AP-ECF Nos. 41, 42, 58, 59. To the extent Mr. Jackson's supplemental briefing and oral argument provided additional facts that could establish the Defendants' liability, those facts were not pled in the Amended Complaint and are not considered. To the extent Mr. Jackson made an oral motion at oral

Three, Four, and Five are dismissed with prejudice in their entirety.[20] Count Two – comprised of several allegations - is dismissed, in part, including the allegations that the Defendants committed malpractice by failing:

- to conduct discovery of Mr. Ross. Mr. Murray, or the Internet Provider which, if conducted, would have constituted a defense to liability under N.Y. Civ. Rights Law §§ 50 and 51;

- to assert affirmative defenses or third-party claims against Mr. Ross or Mr. Murray; and

- to cooperate with Replacement Counsel.

The sole allegation in Count Two that survives the pleading stage is the allegation that the Defendants committed malpractice by failing to conduct and preserve discovery of Mr. Ross, Mr. Murray, or the Internet Provider which, if conducted, would have mitigated the amount of damages awarded against Mr. Jackson.  All of Mr. Jackson's claims for breaches of fiduciary duty are dismissed as either duplicative or for failure to state a claim.

As it pertains to Mr. Jackson's Objection to POC 18-1, in addition to his claim for malpractice that survives this Decision, Mr. Jackson may proceed to prosecute his claim that the fees sought in POC 18-1 should be disallowed or reduced due to an alleged violation of 22 NYCRR 1215.1, an alleged conflict of interest, and alleged excessiveness.

---

argument on May 23, 2018 to file a second amended complaint, in lieu of dismissal with prejudice, the motion is denied.  *See* AP-ECF No. 53, p. 48.

[20]     Because Mr. Jackson previously amended his complaint, these counts will be dismissed with prejudice. *See* AP-ECF No. 22.

**NOW THEREFORE**, it is hereby

**ORDERED**: That, the claim set forth in Count One of the Amended Complaint, for malpractice based upon the Defendants' failure to address a conflict of interest with Mr. Sedlmayr and failure to comply with N.Y. Comp. Codes R. & Regs. Title 22 § 1215-1 is dismissed for failure to state a claim for which the Court may grant relief; and it is further

**ORDERED**: That, the claim set forth in Count Two of the Amended Complaint, for malpractice based upon the Defendants failure to conduct and preserve discovery from Mr. Ross, Mr. Murray, and the Internet Provider is dismissed IN PART for failure to state a claim as it pertains to Mr. Jackson's liability under N.Y. Civ. Rights Law §§ 50 and 51, and is NOT DISMISSED as it pertains to a claim that such testimony may have mitigated the damages against Mr. Jackson in the Leviston case; and it is further

**ORDERED**: That, the claim set forth in Count Two of the Amended Complaint, for malpractice based upon the Defendants failure to assert affirmative defenses and/or a third-party action against Mr. Murray is dismissed for failure to state a claim for which the Court may grant relief; and it is further

**ORDERED**: That, the claim set forth in Count Two of the Amended Complaint, for breach of their fiduciary duty based upon the Defendants failure to cooperate with Replacement Counsel is dismissed for failure to state a claim for which the Court may grant relief; and it is further

**ORDERED**: That, the claim set forth in Count Three of the Amended Complaint, for malpractice based upon the Defendants charging of excessive legal fees is dismissed for failure to state a claim for which the Court may grant relief; and it is further

**ORDERED**: That, the claim set forth in Count Four of the Amended Complaint, for malpractice based upon the Defendants failure to settle the Leviston Case is dismissed for failure to state a claim for which the Court may grant relief; and it is further

**ORDERED**: That, the claim set forth in Count Five of the Amended Complaint, for malpractice based upon the Defendants failure to conduct and preserve discovery from Mr. Ross, Mr. Murray, and the Internet Provider in support of a defense that publishing the Video was not for advertising or trade purposes is dismissed for failure to state a claim for which the Court may grant relief; and it is further

**ORDERED:**  That, for the absence of doubt, the portion of the Amended Complaint objecting to Reed Smith's POC 18-1 is not dismissed and may proceed on the basis that the fees should be disallowed or reduced due to an alleged violation of 22 NYCRR 1215.1, an alleged conflict of interest, and alleged excessiveness.

Dated on March 1, 2019, at New Haven, Connecticut.

*Ann M. Nevins*
United States Bankruptcy Judge
District of Connecticut