**THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION**

| | |
|---|---|
| In Re: <br><br> CURTIS JAMES JACKSON, III, <br><br> Debtor. <br><br> _____ <br><br> Plaintiff, <br><br> v. <br><br> REED SMITH LLP AND <br> PETER RAYMOND, <br><br> Defendants. | CHAPTER 11 <br><br> CASE NO. 15-21233 (AMN) <br><br><br><br><br><br><br> ADVERSARY PROCEEDING <br> NO. CASE NO. 17-02005 (AMN) |

**CURTIS JAMES JACKSON, III'S RESPONSE TO
CREDITOR REED SMITH'S POST-TRIAL BRIEF**

## **TABLE OF CONTENTS**

|  | Page |
|---|---|
| PRELIMINARY STATEMENT | 1 |
| POINT I: REED SMITH'S FEE CLAIM IS UNREASONABLE; JACKSON'S OBJECTION IS MERITORIOUS | 1 |
|     A. Reed Smith Has Failed to Carry its Burden to Prove that its P.O.C. Fees are Reasonable | 2 |
|     B. Block-Billing Subjects Reed Smith's P.O.C. to Substantial Reduction | 6 |
| POINT II: REED SMITH HAS ADMITTED THAT THE 2004 CALIFORNIA WAS NOT THE CONTRACTUAL BASIS OF THE LEVISTON AND SIMMONS REPRESENTATIONS | 7 |
| CONCLUSION | 9 |

## **TABLE OF CASES**

| | Page |
|---|---|
| Aiello v. Town of Brookhaven, No. 94 Civ. 2622, 2005 WL 1397202, at *3 (E.D.N.Y. June 13, 2005) | 6 |
| Gonzalez v. Bratton, 147 F.Supp.2d 180, 213 (S.D.N.Y.2001) | 7 |
| Hnot v. Willis Group Holdings Ltd., No. 01 Civ. 6558(GEL), 2008 WL 1166309, at *6 (S.D.N.Y. Apr. 7, 2008) | 7 |
| In re Amberg, 148 BR 376, 378 (Bankr D. Conn. 1992) | 4 |
| In re Amstar Ambulance Serv., Inc., 120 B.R. 391, 391-93 (Bankr.N.D.W.Va.1990) | 4 |
| In re Angelika Films 57th, Inc., 227 BR 29, 42 (Bankr S.D.N.Y. 1998), affd, 246 BR 176 (S.D.N.Y. 2000) | 5 |
| In re Boulders on the River, Inc., 169 B.R. 969, 979 (Bankr. D. Or. 1994) | 4 |
| In re Hunt, 124 B.R. 263, 266–67 (Bankr. S.D. Ohio 1990) | 4 |
| In re King, 96 B.R. 206 (Bankr.W.D.Mo.1989) | 4 |
| In re Oneida, Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) | 5 |
| In re Porter, 374 B.R. 471, 479-80 (Bankr. D. Conn. 2007) | 5 |
| In re Quigley Co., Inc., 500 BR 347, 358 (Bankr. SDNY 2013) | 4 |
| Molefi v. Oppenheimer Trust, No. 03 Civ. 5631, 2007 WL 538547, at *7 (E.D.N.Y. Feb. 15, 2007); Williams v. New York City Housing Authority, 975 F.Supp. 317, 328 (S.D.N.Y.1997) | 7 |
| Sea Spray Holdings, Ltd. v. Pali Financial Group, Inc., 277 F.Supp.2d 323, 326 (S.D.N.Y.2003) | 7 |
| Sherman v. Novak (In re Reilly), 245 B.R. 768, 773 (2d Cir. BAP 2000) | 5 |
| Williams v. New York City Housing Authority, 975 F.Supp. 317, 328 (S.D.N.Y.1997) | 7 |

## **TABLE OF AUTHORITIES**

| | Page |
|---|---|
| 11 U.S.C. § 502(b)(4) | *Passim* |

**PRELIMINARY STATEMENT**

Debtor Curtis James Jackson, III ("Jackson"), by and through his undersigned counsel, submits this Brief in Reply to the Post-Trial Brief filed by Creditor Reed Smith ("Reed Smith") in this action on October 27, 2022 (the "Post-Trial Brief") (AP-ECF No. 578). For the reasons set forth below, Reed Smith's contention that Jackson's POC. Objections are "baseless" is unsupported by the record of applicable law, and Reed Smith's POC. should be disallowed accordingly.

**ARGUMENT**

I. **REED SMITH'S FEE CLAIM IS UNREASONABLE; JACKSON'S OBJECTION IS MERITORIOUS.**

Reed Smith's opposition to Jackson's objections as to reasonableness under §502(b)(4) offers little more than a statement of various *lodestar* elements followed by a conclusory proclamation that Reed Smith has satisfied those elements. As an initial matter, it is notable that Reed Smith mischaracterizes Jackson's §502(b)(4) objection as an "excessiveness" objection centered around "the hourly rates" charged by Reed Smith. *See* AP-ECF No. 587 at 5-6. This is inconsistent with the record in this action and the evidence presented by both parties at Trial. Reed Smith's briefing on the 502(b)(4) issue is also unavailing for other reasons. Namely, Reed Smith has insufficient Trial evidence at its disposal to meritoriously argue that it carried its burden as claimant, and instead extensively briefs whether *Jackson* -the objector- presented evidence sufficient to "*sustain*" Jackson's 502(b)(4) "*objection*." Moreover, and as discussed herein, in erroneously shifting its burden to Jackson, Reed Smith repeatedly admits facts that (i) support Jackson's 502(b)(4) objections, and (ii) are incompatible with the arguments Reed Smith

1

has relied on throughout this action while attempting to justify its actions during the Leviston Matter.

### A. Reed Smith Has Failed to Carry its Burden to Prove that its POC Fees are Reasonable.

Reed Smith's Post-Trial Brief fails to establish that Reed Smith has met its burden to prove that its POC Fees are reasonable under 502(b)(4). Rather, Reed Smith argues at great length that Jackson has failed to present "any" evidence "sufficient" to "*rebut*" the "strong *presumption*" that "Reed Smith's claimed fees are reasonable." *Id*. at 3, 9 (further contending, "Jackson has come forward with no evidence . . . sufficient to overcome the presumption of the validity of Reed Smith's POC."). In doing so, Reed Smith misconstrues the applicable evidentiary burden, fails to describe pre-trial strategy and work it was supposedly doing in the Leviston representation, and leaves the Court with little more than skeletal pronouncements in determining the reasonableness and validity of the POC Fees sought.

Reed Smith's Post-Trial brief claims that Reed Smith's billing satisfied selected 'reasonableness' elements under the lodestar method.[1] AP-ECF No. 577 at 6. Reed Smith declares in its Post-Trial Brief that, at the Trial, it offered "exactly" the evidence required to establish that its fees were reasonable and fully compensable under 502(b)(4). *Id*. However, Reed Smith failed to evince that its Leviston and Simmons Invoices set forth "in detail" the "work performed by each biller," as they are rife with vague block-billed entries, and furthermore, Peter Raymond was unable to testify as to the nature of the specific tasks and the time spent on such tasks, and no other billing attorney or staff member were proffered at trial to testify as to their respective billed time and tasks. In Reed Smith's skewed view of the proceedings, Raymond

---

[1] Reed Smith admits that the *lodestar* 'reasonableness' elements included in its brief are an incomplete set, representing some of "several factors" the Court may consider "in determining whether the fees constitute a 'reasonable value.'" AP-ECF No. 577 at 6.

offered testimony establishing that Reed Smith's Leviston Fees were "all reasonable and necessary trial preparation work" including "developing trial strategy." *Id*. at 8. Reed Smith omits any meaningful description of what such reasonable and necessary "trial strategy" consisted of. In fact, it claims that it spent much of the time for which is seeks compensation for trying to convince Jackson to settle rather than proceed to trial. This is noteworthy as Reed Smith claims that it spent almost 1,000 billable hours working in furtherance of "trial strategy" was. *See* AP-ECF No. 464 ¶¶ 98-100. The evidence indicates that Reed Smith is *still* not sure what its trial strategy actually was, despite managing to run up around $500,000 in "trial preparation" legal fees over the final four months of its retention by Jackson.

Reed Smith has not proven that its fees were *reasonable* or *necessary* trial preparation work. If anything, Reed Smith has shown that in February, 2012—over *three years* before the Leviston Trial commenced—Reed Smith inexplicably stipulated to foreclosing evidence beneficial to Jackson's defense at trial, and did so without ever consulting Jackson or even mentioning it to him. Reed Smith admits that, in December, 2014—at the earliest point it possibly told Jackson about any details of its supposed trial 'strategy'—the Leviston Trial was scheduled to commence mere weeks later on January 21, 2015. *See* Vol. 1 Trial Tr. 181:19-25; 182:20-183:8; 192:9-25, 205:5-11; 218:17-25; Vol. 2 Trial. Tr. 203:16-23, 231:1-23; Vol. 4 Trial Tr. 52:6-55:4; 117:13-118:16; AP-ECF No. 577 at 9 n.6.

Reed Smith's arguments are less probative of reasonableness and more probative of a yearslong effort by Reed Smith to convince Jackson to settle a case that Reed Smith knew it was not ready to take to trial because it had unilaterally abandoned all efforts to procure critical evidence for Jackson years prior without his knowledge. Reed Smith has failed to prove that it spent 992 hours billing Jackson for work on a trial strategy that actually existed, let alone a trial

strategy that was reasonably compensable under 502(b)(4). The Trial testimony establishes, at best, that Reed Smith's Leviston Matter team did not know what its trial strategy was. In Jackson's Post-Trial Brief (AP-ECF No. 578), Jackson addresses several internal inconsistencies concerning Reed Smith's supposed Leviston Trial strategy reflected in the Trial evidence. *See* AP-ECF No. 578 at 17-25. Reed Smith's Post-Trial Brief fails to address any of these inconsistencies, and fails to even commit a description to what its so-called trial strategy was. These inconsistencies in the Trial record reflect non-compensable and unreasonable legal services under applicable law to the extent that the trial strategy was futile, internally inconsistent, unfeasible, and redundant. *See* In re Hunt, 124 B.R. 263, 266–67 (Bankr. S.D. Ohio 1990)(denying fees for lack of results achieved; record showed fees were for work that was redundant, "ill-advised," or directed towards unfeasible endeavors and thus not "reasonably calculated to produce a benefit to the [client];" "much time and effort went into the preparation of those documents, but the underlying feasibility of the proposal was nonexistent at the time . . .") In re Boulders on the River, Inc., 169 B.R. 969, 979 (Bankr. D. Or. 1994)(significant fees incurred in connection with litigation work that attorney should have known would be fruitless was not "reasonable"); In re Amberg, 148 BR 376, 378 (Bankr D. Conn. 1992)(attorney fees denied for lack of benefit to client); In re King, 96 B.R. 206 (Bankr.W.D.Mo.1989) (attorney fees denied in full and interim fees already paid disgorged; applicant should have known that the services rendered were futile); In re Amstar Ambulance Serv., Inc., 120 B.R. 391, 391-93 (Bankr.N.D.W.Va.1990)(denying all attorney fees directly related to the development and preparation of legal strategy that was ultimately unsuccessful for debtor; strategy "clearly" had "no reasonable chance" at accomplishing a favorable, effective result for debtor); In re Quigley Co., Inc., 500 BR 347, 358 (Bankr. SDNY 2013)("[C]ompensation should be denied when it is

4

clear" that the fees are for legal services that should have appeared unfeasible or unreasonable to applicant under the circumstances); In re Angelika Films 57th, Inc., 227 BR 29, 42 (Bankr S.D.N.Y. 1998), affd, 246 BR 176 (S.D.N.Y. 2000)("An attorney should only proceed with a legal service if the potential benefit of the service, which takes into consideration the chances of success, outweighs the costs.").

Reed Smith had the burden of proof, as claimant this proceeding, to prove by a preponderance of the evidence that its billable hours charged in the POC Invoices were spent on reasonable, allowable legal work under §502(b)(4). In re Porter, 374 B.R. 471, 479-80 (Bankr. D. Conn. 2007); In re Oneida, Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009). The Trial evidence described above instead establishes that Reed Smith's pre-trial work was *unreasonable*, and propelled by a purported trial strategy that Reed Smith has failed to articulate, and not designed to benefit Jackson in any way as evidence was foreclosed by the 2012 Stipulation, and additionally, any such material was withheld from Jackson by Reed Smith pre-trial. Jackson has thus satisfied his burden as objector to come forth with evidence that, if believed, would negate the legal sufficiency of Reed Smith's POC. under the applicable "reasonableness" law described above. *See* In re Porter, 374 BR at 480 (*citing* Sherman v. Novak (In re Reilly), 245 B.R. 768, 773 (2d Cir. BAP 2000)). Reed Smith's failure to argue its own burden of proof in its Post-Trial Brief, or to even address the glaring inconsistencies in the record concerning its work in furtherance of its purported trial strategy for which it seeks compensation, both underscore the following: Reed Smith has no proof capable of meeting its own evidentiary burden on the §502(b)(4) issue. The Court should accordingly rule in favor of Jackson on his objections under §502(b)(4).

5

**B. Block-Billing Subjects Reed Smith's P.O.C. to Substantial Reduction**

Reed Smith's attempt to save itself from the ramification of its own pervasive block-billing is without merit. Once again attempting to argue *Jackson's* burden rather than its own, Reed Smith contends that its fees are not reducible for block-billing on the purported basis that Jackson has not proven that block-billing subjects the fees to reduction. *See* AP-ECF No. 577 at 14-16. Setting aside Reed Smith's flawed contention, that Jackson has the burden to establish the effect of block-billing under Second Circuit law, Reed Smith neglects that the block-billing issue is primarily a *legal* question. Jackson sets forth the ubiquity and legal effect of Reed Smith's block-billing in his Post Trial Brief. *See* AP-ECF No. 578 at 15-17. However, annexed hereto as **EXHIBIT A** is a breakdown expounding and quantifying the precise extent of Reed Smith's block-billing, as derived from exhibits admitted in evidence at Trial. As the Court will see, for example, **57% of the total billable Leviston Matter hours** are block-billed. *See* **Ex. A**; AP-ECF Nos. 466-2, 466-3, 466-4.[2] Particularly given that the record has established the internal inconsistency and unreasonableness of Reed Smith's purported legal work under § 502(b)(4), as described *supra*, Reed Smith's block-billing is properly subject to a substantial reduction on two grounds: (i) the substantial breadth of Reed Smith's block-billing creates "inherent difficulties the Court would encounter in attempting to parse out whether the number of hours spent on the work performed was reasonable;" and (ii) the hours block-billed include extensive independently unreasonable legal work, including the extensive billing for "trial prep" with respect to an unreasonable, and at least partially non-existent or non-feasible, trial strategy. Aiello v. Town of Brookhaven, No. 94 Civ. 2622, 2005 WL 1397202, at *3 (E.D.N.Y. June 13, 2005); *see also*

---

[2] Jackson contends that all fees should be disallowed in its entirety. Specifically, as to *Simmons*, Reed Smith admitted it was paid $30,000 of fees in *Simmons*, thus reducing their claim in that amount. Additionally, $22,000 in fees in *Simmons* were not properly invoiced or specified in billing records, and as such, should likewise be disallowed.

Gonzalez v. Bratton, 147 F.Supp.2d 180, 213 (S.D.N.Y.2001) (fees reduced because block-billing "renders it difficult to account properly for the expenses related solely to [the compensable] matter"); Hnot v. Willis Group Holdings Ltd., No. 01 Civ. 6558(GEL), 2008 WL 1166309, at *6 (S.D.N.Y. Apr. 7, 2008) (collecting cases); Sea Spray Holdings, Ltd. v. Pali Financial Group, Inc., 277 F.Supp.2d 323, 326 (S.D.N.Y.2003); Molefi v. Oppenheimer Trust, No. 03 Civ. 5631, 2007 WL 538547, at *7 (E.D.N.Y. Feb. 15, 2007); Williams v. New York City Housing Authority, 975 F.Supp. 317, 328 (S.D.N.Y.1997).

**II.   REED SMITH HAS ADMITTED THAT THE 2004 CALIFORNIA RETAINER WAS NOT THE CONTRACTUAL BASIS OF THE *LEVISTON* AND *SIMMONS* REPRESENTATIONS**

In its Post-Trial Brief, Reed Smith continues to advance the following legally absurd theory: the 2004 California Retainer is a written contract governing the *Leviston* and *Simmons* representations because the representations were *excepted* from needing a written contract under Part 1215-2's "same general kind" exception. *See* AP-ECF No. 577 at 18. Jackson's Post-Trial Brief sets forth why this legal theory is a blunder. *See* AP-ECF No. 582 at 7-15. Putting aside Reed Smith's inability to articulate a contract theory that makes legal sense, Reed Smith's Post-Trial Brief confirms that Reed Smith itself admits facts that are contrary to its theory that the 2004 California Retainer governed the *Leviston* and *Simmons* representations.

Reed Smith admits that the terms of the 2004 California Retainer did not apply to *Leviston* and *Simmons* representations. Reed Smith repeatedly concedes that the parties' course of dealings fell outside the material terms of the 2004 California Retainer. Namely, Reed Smith concedes that the parties were negotiating price terms right up through the period covered by Reed Smith's POC Invoices. *See, e.g.* AP-ECF No. 577 at 11 (characterizing, citing Trial testimony confirming that the parties had calls, discussions to negotiate price terms concerning

7

the Leviston Trial). Indeed, the Trial record confirms that the parties' course of dealing in the *Leviston* and *Simmons* representations was such that price terms and other material terms were negotiated and amended on an ongoing basis, not governed by the written terms contained within the four corners of the 2004 California Retainer. *See*, *e.g.* Vol. 1 Trial Tr. 35:17--37:2; 39:10-16; 48:3-5; 107:12-108:10; 133:15-21; 188:20-189:4; Vol. 6 Trial Tr. 10:2-15; 16:14-22;

Furthermore, and in utter contradiction to their argument that the 2004 California Agreement is applicable to the Leviston Matter on its face pursuant to Part 1215-1, Reed Smith argues that the 2004 California Retainer covers the *Leviston* and *Simmons* representations because they were of "*the same general kind*" as prior litigation, pursuant to the exception enumerated in Part 1215-2. To support this flawed argument, Reed Smith points to three matters—*Alcorn v. Jackson* ("*Alcorn*"), *Jackson, III v. Taco Bell Corp* ("*Taco Bell*"), and *Jackson, III v. Traffix, Inc.* ("*Traffix*"). *See* AP-ECF No. 464 ¶¶ 28-29. Reed Smith claims that, as *Alcorn* involved an allegation of assault and *Taco Bell* involved Jackson's claims under Civil Rights Law 50 and 51 and *Traffix* involved Jackson's claim of intentional infliction of emotional distress, the Leviston Matter was of the same general kind. *See id*. ¶¶ 28-29, 33. This is an overly simplistic view, and fails to recognize that *Leviston* is factually distinguishable from these matters, in that it involved salacious allegations surrounding the posting of a sex tape, for which Jackson as the defendant was exposed to sizable damages. *Alcorn* involved a personal injury lawsuit in which Jackson was named due to allegations his security personnel assaulted a paparazzi photographer, in *Taco Bell*, Jackson was the plaintiff, seeking damages against *Taco Bell* for unauthorized use of his likeness in an advertising campaign, and in *Traffix* Jackson was the plaintiff, seeking damages as someone who had been shot in real life, against *Traffix* for

8

using his likeness in game in which the player would use a gun to shoot Jackson. Highly different than the Leviston Matter, and in no way the "*same general kind*."

## CONCLUSION

As such, for the reasons stated herein, and in Jackson's Post-Trial Brief, the relief sought by Jackson should be granted, and judgment entered in favor of Jackson in its entirety.

Dated: November 7, 2022　　　　　　　　　Respectfully Submitted,
　　　　New York, New York

**BARATTA, BARATTA & AIDALA LLP**
By:　/s/ Imran H. Ansari
　　　Imran H. Ansari, Esq.
　　　546 Fifth Avenue, 6th Floor
　　　New York, NY 10036
　　　T: (212) 486-0011
　　　F: (212) 750-8297
　　　iansari@aidalaw.com

**ZEISLER & ZEISLER, P.C.**
By:　/s/ John L. Cesaroni
　　　John L. Cesaroni (ct29309)
　　　10 Middle Street, 15th Floor
　　　Bridgeport, Connecticut 06604
　　　Tel: 203.368.4234
　　　jcesaroni@zeislaw.com

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

      I, John L. Cesaroni, certify that on November 7, 2022, a copy of the foregoing was filed electronically and emailed via the Court's CM/ECF electronic noticing system. Parties may access this filing through the Court's CM/ECF System.

                                                    /s/ John L. Cesaroni
                                                    John L. Cesaroni (ct29309)
                                                    10 Middle Street, 15th Floor
                                                    Bridgeport, Connecticut 06604
                                                    T: (203) 368-4234
                                                    jcesaroni@zeislaw.com

                                                   *Counsel for Plaintiff*